No. 878.

## MILES, TRUSTEE, ETC., *v.* DE WOLF ET AL.

ATTORNEY AND CLIENT.— *When Such Relation Exists.*—*Contract.*—*Professional Services.*—*Attorney's Fees.*—*Decedents' Estates.*—A. died testate, devising almost his entire estate to B. and C., in trust for D., E. and F., three nieces. C. did not qualify, but B. qualified to look after the interest of his wife, a *cestui que trust.* G. was appointed administrator with the will annexed. A suit was instituted to set aside the will. G., as administrator, employed, among other attorneys, H. and I. to defend and sustain the will, for which services they were paid in full, the first trial resulting in a disagreement of the jury. Before the second trial of the case, G. resigned his trust, and H. was appointed administrator *de bonis non*, with the will annexed, and I. was appointed guardian of a minor child of D., deceased. In the second trial, B., H. and I., among others, were defendants in their respective trust capacities. H. and I. prepared the case for trial, interviewed witnesses brought to their office by B., and assisted at the trial, as attorneys, in the presence of B. H. and I. bring suit against B. for professional services rendered for him in the second trial of the cause.

*Held,* that the fact that H. and I. interviewed witnesses brought to their office by B., in preparation for trial, and assisted, as attorneys at the trial, in the presence of B., raises no presumption of employment by B.

*Held,* also, that the evidence is insufficient to sustain the verdict rendered in favor of plaintiffs.

From the Knox Circuit Court.

*H. S. Cauthorn, W. F. Townsend* and *J. Wilhelm,* for appellant.

*W. A. Cullop* and *C. B. Kessinger,* for appellees.

DAVIS, J.—The complaint filed in this case in the court below was in the words and figures following, to wit: "STATE OF INDIANA, KNOX COUNTY, ss:

> "WILLIAM H. DE WOLF,
> SMILEY N. CHAMBERS,
> EDGAR H. DE WOLF,
> *vs.*
> WILLIAM R. MILES, Trustee under the last will and testament of William J. Wise, deceased.

"Knox Circuit Court, March Term, 1890.

"The plaintiffs, late copartners, doing business under the firm name of De Wolf, Chambers & De Wolf, complain of the defendant, and say that said defendant is indebted to them in the sum of six thousand dollars, for services, as attorneys, rendered said defendant at his special instance and request in the defense of the suit of Jacob Shugart *et al.* against said defendant and others, and for special services rendered said defendant in the management of said trust, a bill of particulars being filed herewith and made a part hereof. And plaintiffs say that said account is due and remains wholly unpaid. Wherefore they demand judgment for six thousand dollars.                  CULLOP & KESSINGER,
                                    Attorneys for Plaintiffs."

In the bill of particulars, the alleged services in the Shugart case were estimated at $5,000, and the services rendered in the management of the trust at $1,000.

The answer was a general denial, payment, and set-off, but the alleged payment and set-off were founded on items of nominal amount only, and, therefore, these answers are not material so far as the questions presented for our consideration are concerned.

There is no averment in the complaint that said Miles was trustee under any will or for any person. Neither is there any averment as to the extent, character, value or condition of the estate, if any, in his hands. In fact, it is not alleged that he had any trust estate in his hands or under his control, or that he was, in such trust capacity, a party to any suit, or that, as trustee, he required the services of an attorney, or that, as trustee, he employed appellees to perform any services for him, or that any such services were necessary.

On whatever theory the parties to the action may have proceeded in the court below, the case, as it comes to us

on the record, appears, under the authorities, to have been merely a personal action against said Miles, to recover from him the alleged value of the services rendered by appellees. *Turner* v. *Flagg, Guar.,* 6 Ind. App. 563, and authorities there cited.

What we have said on this subject has been for the purpose of getting an accurate statement of the pleadings, and the theory of the case before us, in order to determine whether there is available error in the record.

The cause was submitted to a jury for trial, and resulted in a general verdict for appellees in the sum of two thousand four hundred and eighty dollars, on which verdict a personal judgment was rendered against William R. Miles.

The history of the case, with a general statement of the facts, may be summarized as follows:

"William J. Wise, of Vincennes, died testate January 4, 1884, leaving a large estate. He left no issue, as he was never married. By his will, he devised almost his entire estate to William R. Miles and John M. Boyle, in trust for the use and benefit of Elizabeth S. Miles, Catharine A. Fay, and Mary B. Ryder, his three nieces, one equal third to each.

"The said nieces were all married, and their husbands living, at the date of the death of testator. By the provisions of the will, if either of the husbands of the *cestui que trust* should die, then the one-third interest of his estate should absolutely vest in the surviving widow, freed from the trust. And if either of said nieces should die before their husbands, and leave issue surviving, then the one-third interest in his estate should absolutely vest in her surviving issue, also freed from the trust. Catharine A. Fay and Mary B. Ryder, two of the nieces, died before their husbands, and before the estate was settled, and while it was in litigation. They both left minor

children, and, by the terms of the will, one-third of the estate of the testator vested in their children. F. M. Fay, the surviving husband of one, was appointed guardian of her children, and Smiley N. Chambers was appointed guardian of Emma W. Ryder, the minor child of Mary B. Ryder. This left under the charge and control of the trustees under the will only one-third of the estate, the interest of Elizabeth S. Miles.

"John M. Boyle, one of the trustees named in the will, did not qualify, but William R. Miles, the husband of Elizabeth S. Miles, qualified to look after the interest of his wife.

"After the death of William J. Wise, the testator, Richard J. McKenney was appointed administrator, with the will annexed, of his estate, and made an inventory, collected many thousands of dollars of notes and other choses in action, settled and adjusted a partnership of over thirty years' duration, of which testator had been a member, involving assets of over $200,000, and, in fact, administered the estate and had the assets ready for distribution, and filed a final account showing the complete settlement of the estate and the character of the assets in hand ready for distribution. Distribution was alone prevented and postponed by pending suits to contest the will, in order to ascertain whether distribution was to be ordered according to the will, if sustained, or according to the law, if it was annulled. The estate was in this condition when McKenney resigned the trust, and when William H. De Wolf was appointed administrator *de bonis non.*

"McKenney was allowed, for his services in settling the estate, in all, $4,750.

"After the death of testator, and the probate of his will, Henry K. Wise, a brother of testator, commenced an action in the Knox Circuit Court to set it aside. This

Miles, Trustee, etc., *v.* De Wolf *et al.*

action was tried in said court before a jury, and resulted in a verdict sustaining the will. On this trial, which lasted some four weeks, substantially all the evidence tending to sustain and uphold the will was hunted up, as well as most of the evidence relied on to defeat it, and the same was taken down in shorthand and embodied in a bill of exceptions. The appellees in this case had no connection with that litigation or the estate of testator in any way.

"Henry K. Wise, the contestant, died, and the appeal was never prosecuted from the judgment of the Knox Circuit Court.

"Afterwards Jacob Shugart and other heirs of testator commenced an action in the Knox Circuit Court to contest his will. This action was, on the application of contestants for a change of venue, sent to the Sullivan Circuit Court for trial. At the time this second action was commenced, the interests of Catharine A. Fay and Mary B. Ryder had vested in their minor children, by their death, and Frank M. Fay and Smiley N. Chambers, the guardian of Emma W. Ryder, the sole heir of Mary B. Ryder, were both made defendants in that suit, as also Richard J. McKenney, the administrator with the will annexed of the testator, his estate being unsettled, and William R. Miles, the trustee who had charge, under the will, of the one-third interst of Elizabeth S. Miles, his wife.

"The first trial of the said second suit brought by Shugart and others, in the Sullivan Circuit Court, before a jury, resulted in the jury failing to agree. On that trial Richard J. McKenney, the administrator, employed William H. De Wolf and Smiley N. Chambers, among other attorneys, to defend and sustain the will, and paid them in full for the services rendered on said trial under said employment. The testimony on the trial of that

cause to sustain the will was practically the same as the testimony on the first trial of the case of Henry K. Wise.

"After the said first trial, it was deemed advisable to get rid of McKenney as administrator, as he was thought unsafe on account of his wife being interested in defeating the will, as one of the general heirs of testator, and taking an active part in the pending suit to accomplish it.  To prevent measures being taken to remove him, McKenney resigned as administrator, and settled the estate ready to deliver all the assets to a successor, which assets were in fact turned over to his successor before the second trial of the cause.

"The second trial of the case of Shugart, had in the Sullivan Circuit Court, before a jury, resulted in a verdict sustaining the will.  This second trial was not as long continued as the preceding one, and the evidence to sustain and support the will, was practically the same as the evidence on the two former trials, and the evidence on the preceding trial of Shugart, resulting in the jury failing to agree, was also taken down in full by a stenographer appointed by the court.

"On the last trial of the Shugart case, which resulted in a verdict sustaining the will, a question of law arising on the ruling of the court admitting certain testimony was reserved for the decision of the Supreme Court, on appeal.  A bill of exceptions embodying the question reserved was filed and the appeal prosecuted, resulting in the affirmance of the judgment of the Sullivan Circuit Court.

"After the first trial of the Shugart case and after the resignation of McKenney as administrator, William H. DeWolf, one of the appellees, was appointed administrator *de bonis non*, with the will of testator annexed, and was properly substituted as a defendant in lieu of Mc-

Kenney in the Shugart contest, before the trial of the cause.

"In the last trial of the case of Shugart in the Sullivan Circuit Court, the following attorneys were especially employed to defend the will in said court, and also to defend or prosecute any appeal in the Supreme Court, that might be taken from the judgment of the Sullivan Circuit Court, and their receipts were drawn so as to evidence this special contract and agreement: Hays & Hays, of Sullivan; Gardiner & Taylor, of Washington; Harrison, Miller & Elam, of Indianapolis, and McDonald, Butler & Snow, of Indianapolis.

"Messrs. Gardiner & Taylor of Washington, Frederick W. Viehe and Mason J. Niblack of Vincennes, were retained and took part in all the three trials had to contest the will of the testator.

"The attorneys for the defense participating in the trial of the Shugart case paid all their own expenses. The expenses of William H. DeWolf, who was defendant as well as administrator, were paid out of the estate of testator before it was settled and distribution made. The expenses of Smiley N. Chambers, who was guardian of Emma W. Ryder and also a defendant, were also paid out of the estate before distribution.

"The same assets that McKenney had on hand when he resigned the trust, passed to DeWolf as his successor, and DeWolf procured an order of court to authorize him to suffer the assets so received by him to remain in bank in the same manner that they had been kept by McKenney. After the judgment of the Sullivan Circuit Court was rendered sustaining the will, and before the appeal was taken to the Supreme Court therefrom, DeWolf filed his final account as administrator, showing that the assets of the estate were in the same condition and consisted of same items as turned over to him by McKenney, only

increased in amount by interest that had accrued and been received on United States bonds. He claimed for his services $10,000, which was resisted by appellant as being excessive. Pending adjudication of the amount of his allowance, the court ordered him to distribute all the estate in his hands among the parties entitled thereto, under the will, except the $10,000 claimed by him for his services as administrator, and he accordingly distributed the same, one-third to Smiley N. Chambers, one of appellees, who was guardian of Emma W. Ryder; one-third to F. M. Fay, guardian of the minor heirs of Catharine A. Fay, and one-third to William R. Miles, as trustee for his wife, Elizabeth S. Miles. The $10,000 claimed for services were to be held for further order on proof of the value of his services. On hearing proof of the value of his services, the court allowed him $6,820, and ordered the $3,180 remaining to be distributed to the parties entitled thereto under the will, which was accordingly done by DeWolf, and the estate was declared settled and he was discharged. William H. DeWolf was only practically administrator about seven months, and the assets he distributed were the same he had received from McKenney, with the exception of interest received on the United States bonds.

"The court, in hearing proof on the claim of DeWolf for services as administrator, admitted and received testimony as to the appointment of DeWolf as administrator *de bonis non*, the amount of bond he gave as such, the amount of the assets, his services as an attorney in defending the suit of Shugart to contest the will in both the Sullivan Circuit Court and in Supreme Court on appeal, and all matters and things done and performed by him in connection therewith, as to loss of time and attendance at court in a foreign county, and every matter connected with or growing out of said suit, excepting

his expenses, which were paid out of the estate without question, and which payment of his expenses was admitted by DeWolf, but it does not appear that the court allowed him anything for his services as attorney.

"After the final settlement of the estate and distribution of the assets, the appellees, as partners at law, filed in the Knox Circuit Court, on the 28th day of February, 1890, the complaint in this case to recover from appellant for professional services rendered by them in the Sullivan Circuit Court and in Supreme Court on appeal, and for advice given him as trustee at his special instance and request, and making an account current for him. The appellant denied the indebtedness *in toto*, except as to an account current, and that he ever employed appellees to render any service whatever for him, either in the Sullivan Circuit Court or in Supreme Court in the Shugart case, and denied seeking or obtaining any advice from them in the management of the trust, and that the only service rendered by appellees for him as trustee or otherwise was simply copying the items of receipts and disbursements from his account book, in the form of a report, to submit to court, of his trust, and that appellees had in their hands twenty dollars of money for his use, which was sufficient to cancel and offset the services rendered by them in making his account as trustee. The twenty dollars claimed was not denied."

There are in some other particulars material facts, which will, further on in the course of this opinion, be more fully stated.

The first error discussed is that the court below erred in overruling appellant's motion for judgment in his favor on the answers of the jury to the interrogatories.

The facts found by the jury in answers to the interrogatories are, in substance, as follows:

*First.* That William H. DeWolf was administrator *de bonis non, cum testamento annexo*, of the estate of William J. Wise, at the time of the last trial in the Sullivan Circuit Court.

*Second.* That Smiley N. Chambers was guardian at law of Emma Ryder during the last trial in the Sullivan Circuit Court.

*Third.* William H. DeWolf was appointed such administrator in October, 1887.

*Fourth.* That he was discharged as such in February, 1889.

*Fifth.* That said William H. DeWolf, administrator, was party defendant upon said last trial.

*Sixth.* That William H. DeWolf had received for his services, as such administrator, six thousand, eight hundred and twenty dollars.

*Seventh.* That the appellees were partners in the practice of the law in May and June, 1888.

*Eighth.* That Smiley N. Chambers was guardian at law of Emma Ryder, and party defendant in the suit tried in the Sullivan Circuit Court.

"Int. 9th. Did the defendant William R. Miles, trustee, etc., employ the plaintiffs as attorneys to defend the action of *Shugart* v. *Miles*, on the last trial thereof, in May and June, 1888, in the Sullivan Circuit Court?

"Ans. We decide that the plaintiffs were in his employ.                    J. R. HADDEN, Foreman."

"Int. 10th. If you find any such employment was made as inquired about in the ninth interrogatory, state when the contract was made, where made, and with which one of the plaintiffs was it made.

"Ans. We decide that they were employed in the first trial at Sullivan, and were not discharged.

"J. R. HADDEN, Foreman."

*Eleventh.* That said firm of attorneys made out a re-

port for William R. Miles as trustee, and filed the same in court.

*Twelfth.* That William R. Miles employed said firm of attorneys in the appeal to the Supreme Court.

*Thirteenth.* That said firm of attorneys assisted in preparing the brief, and were present when the case was argued.

It is earnestly insisted that this motion should have been sustained, because one of the appellees, William H. DeWolf, was, as administrator, a party defendant, and another of the appellees, Smiley N. Chambers, was also a party defendant as guardian of the person and property of Emma Ryder, in the identical cause for which they seek compensation in this action as attorneys.

The contention is that the law forbade appellees, William H. DeWolf and Smiley N. Chambers, occupying the position they did—one as administrator of the estate of William J. Wise, deceased, and the other as guardian of the ward whose property interests were involved,—from accepting employment and receiving compensation as attorneys for the discharge of duties which the law imposed upon them from the first moment after they qualified and became responsible for the legal protection of the interests involved in the trusts committed to their hands.

It is well settled that an administrator can not recover for services rendered by him as an attorney in the settlement of an estate, and neither is a law firm of which he is a member entitled to such compensation. Sections 2396 and 2398, R. S. 1881; *Taylor* v. *Wright, Admr.*, 93 Ind. 121; *Pollard* v. *Barkley,* 117 Ind. 40.

The appellees in argument do not controvert the law as enunciated above and supported by the authorities cited, but they urge "That one defendant may employ his co-defendant to represent and defend his interest, al-

though they may be co-trustees representing the same fiduciary interest. In the case at bar, they were not co-trustees in any sense whatever, but represented entirely different and distinct interests with entirely different and distinct relations, duties, and responsibilities."

Many authorities are cited by counsel in support of the proposition that the offices of trustee and administrator are distinct, and involve different duties. Schuyler's Execs. and Admrs., sections 46, 472; Williams' Execs. and Admrs., section 472; Lewin on Trusts, section 205; *Valentine* v. *Valentine*, 2 Barb. Ch. 430; *Lansing* v. *Lansing*, 31 Howard's Pr. Rep. N. Y. 55; *Wheatly* v. *Badger*, 7 Pa. St. 459; *Simpson* v. *Cook*, 24 Minn. 180; 7 Am. and Eng. Encyc. of Law, p. 179, and notes; *Drury* v. *Natick*, 10 Allen (Mass.) 169, 174.

And, further, when one trustee acts as solicitor or attorney for another trustee, in a litigation in which both, by reason of their trust relation, are involved, that such solicitor or attorney is entitled to compensation from his co-trustee for the services so rendered. *Cradock* v. *Piper*, 47 Eng. Ch. Rep. 663; *Lyon* v. *Baker*, 5 DeGex and Smale's Reps. 622.

The Cradock case, on which appellees rely in support of their position on this question, was one in which there were four trustees and where three of them had employed the fourth, who was a solicitor, to represent them as such trustees in several important litigations in which the trust estate was involved, and, so far as appears, the trustee who so acted was the sole and only solicitor who appeared for the trust in the litigation, and it was held, under the facts in that case, that he was entitled to have his costs taxed as such solicitor, in order that the same might be paid out of the trust estate. But whatever view may be taken of the application to this case, of the authorities cited, and without at this time entering upon

an analysis of the interrogatories and answers thereto, it will suffice to say that it is doubtful whether, on any theory, the answers of the jury to the interrogatories are so effectually and irreconcilably antagonistic to the general verdict as to overthrow it and control the result, and we will, therefore, for the present, pass on to the consideration of other questions which are pressed upon our consideration. *Gaar, Scott & Co.* v. *Rose*, 3 Ind. App. 269; *Baldwin* v. *Shill*, 3 Ind. App. 291.

The next assignment of error is overruling appellant's motion for a new trial. It should be borne in mind that for services in the Shugart case, Mr. De Wolf, as administrator, paid attorney fees as follows:

Harrison, Miller & Elam ............ $5,000
McDonald, Butler & Snow ........... 5,000
Gardiner & Taylor .................. 2,000
John T. Hays ...................... 2,000

Pursuant to the written request of Chambers, Miles and all the parties in interest, he was directed "to pay the fees of counsel in the contest of the will." In addition thereto, De Wolf and Chambers were paid by the administrator for services rendered by them on the first trial in the Sullivan Circuit Court, and Viehe and Niblack were also paid by the administrator, out of the trust estate in his hands, for services rendered on each trial. It is not claimed that De Wolf and Chambers were employed by appellant in the first trial. The uncontradicted evidence also shows that when the proposed appointment of De Wolf was under consideration, Mr. De Wolf said to Mr. Miles: "If he was appointed administrator it would cut him off of any claim or right to compensation as an attorney."

In this connection we quote, at length, extracts from brief of counsel for appellant, as follows:

"1. The verdict of the jury is not sustained by the evidence, but is contrary to both the law and the evidence.

"The complaint in this case is to recover for professional services alleged to have been rendered under a contract of employment. The general denial which was pleaded imposed upon appellees the burden of proving, by a fair preponderance of the evidence, every material fact necessary for a recovery. This is clear, and will not be questioned. Therefore, the jury, before they could find any verdict in favor of appellees, must first find from the evidence, that the services sued for were rendered under a contract with appellant. The evidence of appellees is all in the record. The only evidence in the case that has any bearing whatever upon this material question, is the evidence of Mr. De Wolf and of Mr. Chambers. We invite the careful attention of the court to their evidence. It will be found that Mr. Chambers, in his evidence, says nothing whatever about the services being rendered under any contract with appellant, or at his special instance and request. Nothing whatever, in his evidence, appears to throw any light whatever upon this question of employment by appellant, which is absolutely necessary for a recovery. Nothing appears to show that the services he rendered were not rendered in discharge of his duties as guardian of Emma W. Ryder. And, in the absence of all proof on the subject, the legal presumption is that he performed the services in discharge of the duties devolved upon him by law as guardian of Emma W. Ryder. And there is nothing whatever in the evidence of Mr. De Wolf that has any tendency whatever to show that the services sued for were rendered under a contract with appellant or at his special instance and request. The only statement in his entire evidence in the least concerning appellee is a naked as-

Miles, Trustee, etc., *v.* De Wolf *et al.*

sertion, where he says:   'I rendered the services for the defendant.'   Leaving out this naked and unsupported assertion, there is absolutely nothing in his evidence that has any tendency to show that the services were not rendered in the discharge of his duties as administrator. And this statement is not of a fact and does not even assert that appellant employed or requested him to perform said services.   From all that appears, he may have done so voluntarily and without solicitation.   The bare statement that he performed them for the appellant is not sufficient of itself to raise any presumption of an employment by appellant, or even to negative the legal presumption that he was not doing his duty as administrator. We confidently rely upon this total failure of proof of an employment, or that the services were rendered at the special instance and request of appellant, for a reversal of the case.   This case is not one where the rule applies that a case will not be reversed upon a bare preponderance of the evidence.   It is a case where there is a total want of evidence upon a point material to any recovery. The evidence of appellees is in the record, and our positive assertion of the want of any evidence to sustain the verdict on this material question is fully sustained by the record.   The most that can be claimed for it on behalf of appellees, is that they rendered certain professional services in a case, in which there were several parties defendant, among them two of the appellees, F. M. Fay and appellant.   But who employed them, nowhere appears in the evidence, and no attempt was made to show it.   The only thing the evidence discloses affecting in any way appellant, is that he was present in court when the services were rendered.   But this presence of appellant at the time the services were rendered furnishes no ground to presume that he employed them to perform the

services, more than any of the other defendants to the suit who were also present.

"The appellees, in the court below, relied upon this presence and knowledge of appellant as being sufficient of itself to warrant a presumption of employment, and the court below gave color to this claim in one of the instructions to the jury. The verdict of the jury can not be sustained in the absence of proof of an employment of appellees by appellant. His mere presence at the trial when the services were rendered in a case in which he was not a sole party, and in which the appellees, who actively rendered the services, were themselves parties with him and upon whom the law imposed the duty to render and perform them, can not raise any presumption against him to aid appellees or sustain the verdict.

"In the case in which the services were rendered, Mr. De Wolf, one of the appellees, was a defendant as administrator, and Mr. Chambers, another appellee, was also a defendant as guardian of Emma W. Ryder. The law specially imposed upon them, as such defendants, the imperative obligation of rendering the services in person, or to employ some attorney to do so. The trust character in which they were clothed required this of them, and to have failed to do so would have been a gross violation of their trust duties. In the absence of all proof on the subject, the reasonable and legal presumption is that they performed the services in fulfillment of their duties as such trustees. Besides, F. M. Fay, as guardian of the children of his deceased wife, was a party defendant, and was also present when the services were rendered. He represented the same interest as Chambers, and they both represented an equal interest in the litigation as appellant. Why should the mere fact of presence at the trial raise any presumption against appellant of an employment of appellees, more than against Fay?

"Besides, the action of appellees show clearly, we think, that at the time these services were rendered they were in fact rendered on their own behalf and in discharge of their duties as trustees, and not otherwise. It was the duty of Mr. De Wolf, as administrator, to defend the suit and sustain the will, if he believed it a valid instrument. And in so doing, all his reasonable expenses incurred in good faith, including attorneys who were employed to defend, would be allowed him, and paid out of the estate, whether the result of the litigation was favorable or unfavorable to the validity of the will involved in the litigation. *Bratney, Admr.,* v. *Curry, Exec.,* 33 Ind. 399.

"And this is what was actually done in this case before any distribution of the assets. All the expenses of Mr. De Wolf and Mr. Chambers, as defendant, and the fees of the attorneys employed to sustain the will, were thus paid. The written order Mr. De Wolf took from the beneficiaries of the estate to pay attorney fees show this. It was demanded by Mr. De Wolf, and given by the beneficiaries for his satisfaction, although the law would have protected him in making the payment of reasonable attorney fees without it. It may have been feared by Mr. De Wolf that some trouble might arise on account of the fees paid by him to attorneys being unreasonable, owing to the number employed and paid by him. That order to pay attorney fees was signed by Mr. Chambers and Mr. Fay, as well as by appellant, and they represented all the interest involved. If there were any attorney fees due appellees, or claimed by them, why were they not paid out of the estate before distribution of the assets? Or is it equitable and just, after the estate has been settled and the assets distributed, to assert such a claim against appellant alone, representing, as he does,

but a one-third interest in the estate, the same as represented by Mr. Chambers and Mr. Fay?

"So far as any presumption of employment from the fact the services were rendered with the knowledge and in the presence of appellant is concerned, we hold no such presumption can be indulged in this case. Even if Mr. De Wolf, under any possible circumstances, could claim attorney fees, occupying the relation he did to the Shugart case (which right to claim attorney fees by him from any one, we expressly deny), still, in this case, the claim of appellees can not be aided by any presumption. If an attorney in no way connected with a suit as a party renders professional services for a sole party in his presence and with his knowledge, a presumption of employment reasonably and properly arises. But where such services are rendered in a case where there are several parties on the same side, in aid of which rendered and in the presence of all, no presumption of an employment arises hostile to any one in particular to the exclusion of the others. And where the attorney who performs the services is himself a party to the suit, in a case where the law required him to perform such services as a part of his sworn duty, the presumption, in the absence of proof on the subject, certainly is, they were rendered in the line and discharge of his duty, and not otherwise. And such, we insist, is the case we are considering."

This is a part only of the argument of counsel for appellant on the question under consideration, and we quote in full all that counsel for appellees have said with reference to the alleged employment, in which is embodied the substance of the testimony of appellees as to the character and value of the alleged services:

"The legal right upon the part of Miles to employ the firm of appellees being thus established, the question

that remains for this court to investigate is: Was there evidence before the jury tending to support their verdict? If there was such evidence, under the frequent rulings of this court the verdict will not be disturbed.

"William H. DeWolf testified that during the years 1887, 1888, 1889, the firm was composed of William H. DeWolf, Smiley N. Chambers and E. H. DeWolf. 'I was connected with said suit as one of the attorneys for the defense; after the first trial of the case in the Sullivan Circuit Court, we began to prepare for the next trial of the case; from that time we were almost constantly employed, except Sundays, perhaps. I made two trips to McConnelsville, Ohio, one to Peabody, Kansas, the pleadings were reformed and new issues added; I personally attended to same, made two trips to Indianapolis for consultation with General Harrison, one of the attorneys, and interviewed Dr. Fletcher, and also Dr. Thomas.  *  *  *

" 'Mr. Miles brought the witnesses for the defense to our office to ascertain to what they would testify.

" 'Chambers and DeWolf attended to all the legal work required in relation to the witnesses.  *  *  *

" 'I interviewed the witnesses for the defense in my office. I was employed this way day and night. Mr. Miles was there very often. Mr. Miles was in my office almost every day, and sometimes several times a day.  *  *  *

" 'I myself prepared a memorandum of legal questions. On the second trial of the case there were about seventy-five witnesses on each side. There were also a vast number of depositions taken and used in the case on both sides. There were also new witnesses, quite a number, and new evidence adduced. I was present every hour in the court-room during the progress of the trial. Every witness for the defense was privately ex-

amined at our rooms, sometimes it was myself and sometimes Harrison and Gardiner who interrogated.  *  *  *

"'Edgar H. DeWolf, one of the plaintiffs, had personally no connection with the trial of the case, except that during the time it was on trial in the Sullivan Circuit Court he remained at the plaintiffs' office in Vincennes to be prepared to send witnesses to Sullivan as they were needed, and attended to that duty, and had witnesses go to Sullivan as required.  *  *  *

"'I went to Spencer, before Judge Franklin, concerning the case arising on questions involved upon the bill of exceptions.  Chambers was also before the judge at a subsequent day, and the bill of exceptions was finally signed by the judge.  *  *  *

"'I can not give the language used by Mr. Miles when he employed us; he said once that he had spoken to Viehe to represent him in the trusteeship, and that Mr. Viehe did not want to take the case.'  *  *  *

"Smiley N. Chambers testified as follows:  'After the disagreement of the jury on the first trial, another trial of the case was a matter of course.  The attorneys for the defense agreed among themselves that the first thing to be done to insure a successful issue for the defense was to get rid of McKenney; I was finally deputized to call on McKenney and notify him that unless he voluntarily resigned the trust that charges would be made against him, and that he would be legally forced to give up the trust.  Finally, Mr. McKenney made his final settlement of the estate and resigned the trust, and Mr. DeWolf was appointed in his place.  We then commenced preparations for the second trial of the cause in earnest.  Mr. Miles was in our office nearly every day, and sometimes several times a day.  He brought many witnesses to our office who were to give evidence for the defense, in order to have them examined, and they were examined by Mr.·

DeWolf or myself. This took up about all our time. We were the only local attorneys that took charge of the case for the defense, and the work of preparing for the coming trial devolved upon us. The second trial of the case commenced in May, 1888, and lasted about six weeks. I suggested to General Harrison that the issues in the case should be amended by a plea of former adjudication, and the issues in the case were accordingly amended. On the second trial of the case, there were a number of new witnesses and much new matter was brought out in evidence. I took notes of the testimony as it was given by the witnesses, with the expectation of making an argument in the case, but different arrangements were made and I did not make an argument.    *    *    *

" 'I went to Spencer on business connected with the bill of exceptions. The brief in the case on appeal to the Supreme Court was originally prepared by John T. Hays. After he had prepared the same, he brought the brief to our office and it was read over and corrected. I went to Washington to consult with Gardiner concerning the brief, read it over to him and with him made corrections and additions. I superintended the printing of the brief.    *    *    *

" 'Our firm also did work for Mr. Miles as trustee; we gave him legal advice concerning his duties as trustee; we commenced to advise him concerning his duties in 1887 sometime, I do not remember the date. He was continually consulting us and getting our advice. Mr. DeWolf also made out a report for him as trustee, which was filed in this court. It took considerable time and labor to prepare this report; it was quite lengthy and Mr. DeWolf was in all two weeks in preparing it. It was a difficult report to make; it was his first report as trustee; there were many collections to make. Mr. De Wolf worked several nights until a late hour. The great

difficulty in preparing the report was in making the calculations of the premiums of the bonds which he had in his hands. A reasonable fee for the services rendered him as trustee in this respect by our firm was $1,000.'"

The fourth reason assigned in the motion for new trial is "The damages assessed by the jury are excessive in amount," and the fifth reason is "The assessment by the jury of the amount of recovery is erroneous, being too large."

We have carefully read the evidence, and in view of all the facts and circumstances surrounding the case, we fail to find any evidence in the record fairly tending to support the theory that appellant, either individually or as trustee, employed appellees as attorneys to appear for and represent him or any one else in the Shugart case, on the second trial, in the Sullivan Circuit Court, to contest the will of William J. Wise.

Neither of appellees has testified to any fact or circumstance, conversation with, or statement made by said William R. Miles indicating any such employment. The evidence and the answers of the jury to interrogatories indicate that any such agreement was an implied one predicated upon the previous employment of Messrs. De Wolf and Chambers by the former administrator on the first trial of the Shugart case. Any such employment made by said McKenney prior to or on the former trial could not be a continuous one, as his powers to employ and retain counsel ceased before the second trial, and Mr. DeWolf succeeded him as administrator.

The law firm of appellees seems to have been afterwards formed. When Mr. De Wolf accepted the appointment as administrator, he entirely changed his relation to the case, and conceding, without deciding, that he, or the firm of which he was a member, might thereafter have accepted retainer and employment therein as at-

torneys for the trust estate represented by appellant, yet nothing is shown to have been said or done by Mr. Miles, after the first trial, which can be construed as an intent on his part to so retain and employ appellees. The fact that he may have had frequent conversations with them in regard to the case, or that he took witnesses to their office, or that he knew they were devoting their time to preparation for the trial, or that he was present at the trial and saw and knew they were assisting as attorneys therein, when considered separately or together, are not (under the other conceded facts in this case) circumstances indicating or tending to establish such employment by him.

Nothing appears in the record, on this branch of the case, which can be construed as tending to create an obligation, either personally or as trustee, on the part of William R. Miles.

The late esteemed Chief Justice MITCHELL said: "A relation, which the law recognizes as contractual, may arise between the parties in three ways: (1) The terms of the agreement may have been uttered, avowed, or expressed at the time it was made; in which case an express contract results. (2) Circumstances may have arisen, or acts may have been done which, according to the dictates of reason and justice, and the ordinary course of dealing, or the common understanding of men, show a mutual intention to contract; in which case an implied contract arises. (3) There may have been no intention to contract at all, and yet one may have come under a legal duty to another of such a character that the law precludes him from asserting that he did not agree to perform it, and thus, by a fiction of law, a contract results by construction, or .implication." *Ramsey* v. *Ramsey*, 121 Ind. 215 (220).

We do not find anything in the evidence tending to

support the proposition that there was an express contract, or that there was a mutual intention to contract, or from which a contract results from construction. Nothing is shown to have been done or said by appellant which could be fairly construed by appellees as an employment of their firm as attorneys by him on the second trial. There is an entire absence of evidence to sustain the theory that the minds of the parties ever met on the vital question now in dispute.

The evidence was taken at the trial in longhand, in narrative form, and some material parts thereof, may have been inadvertently omitted.

Ordinarily, it is true that where an attorney appears in court for and in behalf of one of the parties involved in a litigation, and performs services in the action, as such attorney, in the presence of the party, the law implies a contract between the attorney and the person who receives the benefit of the services, and in the absence of an agreement as to terms and amount, the client is under obligations to pay the reasonable value of the services so rendered, but under the circumstances of this case that rule is not applicable. It does not appear in this case that appellant knew, or that the circumstances were such that he ought to have known, that appellees were claiming that they specially represented him, or that they were expecting compensation from him.

In fact, the evidence, together with the acts of the parties, and all the facts and circumstances in the case, tend strongly, without contradiction, to support the theory that all of the attorneys who represented the defense in the contest of the will, appeared generally for all of the defendants in interest, and no attorney or firm of attorneys is shown to have been employed by, or to have appeared for or represented the interest of any one person or defendant especially. Further, as we read and

understand the record, the agreement implied, if not expressed, seems to have been that all of the fees of the different attorneys, who appeared in the interest of the defendants, were to be paid in full by said De Wolf as administrator of the estate of William J. Wise, deceased, out of the trust funds in his hands, before distribution.

The isolated and independent expressions, "when he employed us," or "I rendered the services for the defendant," standing alone and without explanation, can not be construed as the statement of any conversation, fact, or circumstance on which to base a contract of employment in the case to contest the will. The qualified expression or assertion, "when he employed us," is not preceded or followed by any statement or explanation tending to show there ever had been any employment of appellees by appellant, so far as the litigation is concerned, and so far as anything to the contrary appears, the expression, for whatever it may be worth, may refer to the services mentioned in the second item of the claim in question.

In his fiduciary capacity, the administrator represented all of the parties in interest in that litigation, and as between themselves, Mr. Chambers, Mr. Fay and appellant each represented a one-third interest, which he was to receive on final settlement of the administrator and distribution of the estate, and no circumstance has been mentioned, either in the evidence or argument, which, in justice and fair dealing, should impose the liability on appellant, either personally or as trustee, to pay the entire fee of appellees, for services rendered by them on the second trial.

The rule has been thoroughly established, in a long line of unbroken decisions, that where there is evidence in the record, fairly tending to sustain the verdict of the

Miles, Trustee, etc., *v.* De Wolf *et al.*

jury on every material point in the case, this court will not, on the weight of the evidence, disturb the judgment of the trial court rendered thereon, but when the evidence is wholly insufficient in any essential particular, as it is in the respect hereinbefore set out in this case, to support such verdict, the judgment will be reversed. *Louisville, etc., R. R. Co.* v. *Eves,* 1 Ind. App. 224; *Nichols* v. *Pressler,* 3 Ind. App. 324.

Several other questions are presented and discussed, which, in some instances at least, do not constitute substantial error, and if others were construed as reversible error, the decisions thereof are unnecessary in view of the conclusion we have reached in the case.

Since this case was submitted, William R. Miles has departed this life, and Mary W. Miles, as administratrix, has been substituted as appellant.

Our conclusion is that while there is some evidence tending to sustain the second item of $1,000 mentioned in the complaint and bill of particulars, there is no evidence in the record, for the reasons stated, to support the first item, and, therefore, the judgment of the court below is reversed, as of the term when submitted, at costs of appellees, with instructions to sustain appellant's motion for a new trial.

Filed May 11, 1893; petition for a rehearing overruled Nov. 23, 1893.