Hauss *et al. v.* Niblack.

No. 8574.

## HAUSS ET AL. *v.* NIBLACK.

ATTORNEY.— *Verdict.—Special Findings.*—A complaint to recover for services as attorney in effecting a compromise of several suits against the defendants, alleged a joint employment by them. Answer of general denial and payment. Verdict for the plaintiff for $750, and special findings: 1. That the defendant H. did not, in connection with the other defendants, or any of them, enter into a joint express contract to employ the plaintiff. 2. That H. did not, in connection with the other defendants, or any of them, jointly agree to pay the defendant.

*Held,* that there was no conflict between the general verdict and the special findings.

SAME.— *Contract.--Ratification.—Instruction.*—In a suit against several jointly to recover for services in effecting a compromise of suits, it is correct to instruct the jury that, though some of the defendants did not unite with the others in employing the plaintiff, in the first instance, yet if the jury should find that they, with knowledge that the plaintiff had effected a compromise of the suits against them and others, accepted, acted upon and enjoyed the fruits of such compromise, they must be held liable with the others.

SAME.—The evidence showing a joint contract by several of the defendants, professing to act for themselves and some others of the defendants, and some evidence tending to prove a ratification by these others, this instruction was correct : "It is a question of fact whether the defendants or any of them, by a joint contract, express or implied, ever employed the plaintiff to render the services alleged. If you find that any of them did so employ him, and that in pursuance thereof he rendered the services, then you should find against those who so employed him by contract, express or implied, for some amount, unless you further find that he has been fully paid." Also the following : " If some of the defendants employed the plaintiff by a contract, express or implied, and some of them did not, and did not afterwards accept or enjoy the fruits of his services, then as to such as did not accept and enjoy the fruits of such services, you should find for them, although the plaintiff should be entitled to recover against the others."

PRACTICE.—*Instructions.*—There is no error in refusing instructions already substantially given, nor those too narrow to be applicable to the whole evidence on the questions to which they relate.

SAME.—*Bill of Exceptions.*—To make an oral addition to or modification of a written instruction prayed is a fatal error, under section 533, R. S. 1881, but to be available error it must expressly appear by bill of exceptions to have been done.

From the Gibson Circuit Court.

*J. E. McCullough, L. C. Embree, R. M. J. Miller* and *J. B. Gamble,* for appellants.

*C. A. Buskirk* and *M. J. Niblack,* for appellee.

BICKNELL, C. C.—The United States had suits pending against the appellants and others, on twelve distillery bonds; Hauss, Jones and Gorman were each on one of the bonds; Robb, Alvis and Cunningham were each on three; Federer, Hazelton, Turpin and Hyneman were each on two of the bonds. Before the institution of this suit, three of the bondsmen, Lamb, Lewis and Holcomb, were dead; Lamb and Lewis had administrators; Holcomb had none and had died insolvent.

This suit was brought by the appellee against all the living bondsmen, except John W. Bingham, and against the administrators of Lamb and Lewis. The first paragraph of the complaint averred that said bondsmen, except Bingham, employed the plaintiff to act for them and render services in their behalf, in obtaining settlements and compromises of said suits on the distillery bonds, and that the plaintiff performed such services, of the value of $1,000, of which seven hundred and fifty dollars had been due and unpaid since March 1st, 1877. The second paragraph of the complaint differed from the first, in stating that $1,000 was the compensation expressly agreed upon.

The bill of particulars was an account, in which all the bondsmen, except Bingham, were stated as debtors to the plaintiff "for services as attorney in adjusting and compromising said suits, the same having been jointly compromised."

Some of the defendants were not served with process; some of them pleaded the general denial; some of them pleaded the general denial and payment; the plaintiff replied in denial of the payment; Jones, Gorman and Hazleton were defaulted; Jerauld, Trippet and Kingston pleaded discharges in bankruptcy; the suit was dismissed as to the administrators of Lewis and Lamb.

The issues were tried by a jury, who found for the plaintiff $750, against the defendants Hauss, Robb, Federer, Alvis, Turpin, Hyneman, Cunningham, Gorman, Hazleton and Jones, and in favor of the defendants Jerauld, Trippet and Kingston. With their verdict the jury returned interrogatories and their answers thereto, as follows:

"1st. Did the defendant Francis W. Hauss, in connection with the other defendants, or any of them, ever enter into an express joint contract to employ the plaintiff, William E. Niblack, to attend to or compromise all twelve of the cases alleged in the complaint herein? Answer. No.

"3d. Did the defendant Francis W. Hauss, in connection with the other defendants herein, or any of them, ever jointly agree or promise, to pay the said William E. Niblack, for services rendered by him as attorney, or in compromising all twelve of the above mentioned suits, alleged to have been pending in the United States Court? Answer. No."

The defendants Hauss, Robb, Federer, Alvis, Turpin, Hyneman and Cunningham, separately moved for a new trial; their motions were overruled; the defendant Hauss moved for judgment in his favor upon the answers to the interrogatories; this motion was overruled and judgment was rendered upon the verdict. From this judgment the defendant Hauss appealed, and the other defendants, against whom judgment was rendered, joined in the appeal.

The errors assigned are, overruling Hauss's motion for judgment in his favor upon the answers to the interrogatories, and overruling the motions for a new trial.

There was no error in overruling Hauss's motion for judgment in his favor. The answers to the interrogatories were not inconsistent with the verdict. The jury may have been satisfied by the evidence, that although Hauss had not entered into the contract, either personally or by an agent, yet he afterwards ratified it.

The motions for a new trial call in question the sufficiency of the evidence and the validity of the instructions. The

plaintiff testified that several of the defendants had spoken to him about employing him, and afterwards had a meeting at Patoka, in April, 1876, at which Hyneman, Lamb, Turpin, Trippet, Lewis, and others were present; that it was there agreed that the plaintiff should act for all the parties interested in the Gibson county bonds except Bingham; that plaintiff proposed to the secretary of the treasury, that the bondsmen should pay $1,505, and that all the suits should be dismissed at the defendants' costs; and that said proposition was accepted; that it had been agreed at the Patoka meeting that Lamb should act for all the parties, and the plaintiff should correspond with him. Plaintiff notified Lamb that the compromise had been made, and that the parties must pay the money to Gen. Veatch; plaintiff afterwards met Lamb, Alvis, Turpin, and probably some others, at Lamb's house, in Patoka, where he told them his fee would be $1,000, and they did not object to the amount; he also told them he must hold all the parties jointly for the amount of the fee. After the first meeting at Patoka, plaintiff met Kercheval, one of the bondsmen for the Spencer county distillery No. 63; he had been informed that plaintiff had been employed by the bondsmen in Gibson county, "so the Spencer county bondsmen came into the arrangement." After the meeting at Patoka, plaintiff saw Hauss; he was not at that meeting, but he seemed particularly anxious to have the matter settled, and wrote plaintiff the following letter:

"PRINCETON, INDIANA, April 21, 1876.

"HON. W. E. NIBLACK:

"*Dear Sir.*—I am authorized by the bondsmen with me on the Robb bond to say that if a compromise can be effected with the government for $75 or $100 each, that we are ready to pay the money. There are eight of the bondsmen that will pay the amount, the others are fire-proof; but do the best for us that can be done, as it is a hardship upon us to pay anything.           Yours, respectfully,

"F. W. HAUSS, for the Bondsmen."

James C. Veatch, for the plaintiff, testified: "I am collector of internal revenue for this district; have been such since 1870. After being informed by the department that the suits on all the bonds had been compromised at $1,505 and costs, I talked with Kercheval, Lamb and Hauss. I notified Niblack, Hauss, Cunningham, Lamb, Turpin, Hyneman and Hazelton; I had one or two interviews with Hauss about the amounts; the amount was paid to me, not all at once; Hauss paid me on behalf of some of the parties, $408; Lamb paid on behalf of others, $804, and the remainder was paid by other parties; I consider Judge Niblack's services in this compromise to be worth not less than $2,000."

James W. Alvis, for plaintiff, testified: "I was at the meeting in Patoka, in April, 1876; Lamb, Lewis, Jerauld, Lucius S. French, Jones, Josiah Barnes, Turpin, Cunningham, Hyneman and Hazelton were there; Dr. Lewis did most of the talking; Niblack was to represent all the bondsmen, and do the best he could for them; * * * I don't think Hauss was there; I think Dr. Lewis said he represented Hauss, or else he said that Hauss would stand to what was done; I was also present in the spring of 1877, when Niblack told Lamb his fee would be $1,000."

Lucius French, for plaintiff, testified: "I was at Lamb's house in the spring of 1877, when Niblack was talking about his fee; Turpin, Alvis, Lamb and Federer were there; I think it was stated that all the parties were liable together."

Wm. H. Trippet testified: "I was at the meeting at Patoka in 1876; Jerauld, Lamb, Caleb Trippet, Alvis, Hyneman, Federer, David Johnson, Turpin, Cunningham and Lewis were there; Hauss was not there; I think Lewis said that he would speak for Hauss."

The foregoing was testimony offered by the plaintiffs.

Robb, Hyneman, Turpin and Hauss were sworn for the defendants, and their testimony was in conflict with the foregoing, except that Hauss admitted that he contributed to pay the assessment after the compromise; and Robb stated that

he knew of the compromise being made; and Hyneman and Turpin both swore that they were at the meeting at Patoka in the spring of 1876.

There was testimony tending to support the verdict, and when that is the case, the verdict will not be disturbed by this court on account of conflicting testimony. *Toney* v. *Toney*, 73 Ind. 34. It was held in *Robinson* v. *Gleadow*, 2 Bing. N. C. 156, that where an insurance has been made for the benefit of several, a jury may infer a joint contract to pay the broker; so in this case the jury had a right to infer that all the parties knew of the arrangement, and assented to it, and were jointly liable to pay the attorney. See the opinion of Lord MANS-FIELD in *French* v. *Backhouse*, 5 Burr. 2727.

It is claimed by the appellants that the court erred in giving to the jury instruction No. 1, asked for by the appellee. This instruction was as follows: " Although the jury may not be satisfied that some of the defendants united with the other defendants in the employment of the plaintiff in the first instance, yet, if the jury should find that such, with knowledge that the plaintiff had effected a compromise of the suits against them and others, accepted, acted upon and enjoyed the fruits of such compromise, they must be held liable with the others for whatever fee, if any, which may be due the plaintiff."

Here were twelve distillery bonds, on each of which the United States had brought suits; there were more than twenty bondsmen, some of them liable on one of the bonds, some on two, some on three and some on four or more, but none of them liable on all the bonds. Ten of these bondsmen meet together and employ an attorney to compromise all the suits; they undertake to act for all the parties, except those upon one bond, and the evidence is that these afterwards " came into the arrangement." If these ten had authority to act for the others, then their contract was the joint contract of all; if they had not such authority, as to any of the absentees, these absentees could ratify what had been done, and after such ratification, there would be the same joint contract as if

all had originally agreed to it. Such a ratification may be by express words or by actions, and if any of the absentees, having knowledge of the contract with the attorney, and knowing that the plaintiff, by virtue of such contract, had acted for them in making the compromise, assented to that action and took the benefit of the contract with the attorney, by receiving the fruits of the compromise, such facts would constitute a sufficient ratification to make the contract theirs, the same as if they had been present, assenting to it, when it was made. There was, therefore, no error in instruction No. 1.

It is claimed that the court erred in instructing the jury as follows: " Now it is a question of fact for the jury to say, whether the defendants herein, or any of them, by a joint contract, either express or implied, ever employed the plaintiff herein to render the services mentioned and charged for in his complaint. If the jury should find that the evidence preponderates in favor of the proposition, that the defendants herein, or any of them, did so employ the plaintiff to render such services, and that, in pursuance of the employment, he rendered the services, then it would be the duty of the jury to find against the defendants, who so employed the plaintiff by contract, express or implied, for some amount, unless they should further find that the plaintiff had been fully paid."

It is said that this instruction was likely "to mislead the jury into the error of finding for the appellee, upon the theory, that a joint liability in the appellants might be implied from the circumstances of the case;" the appellants claim that, " under the circumstances of this case, an implied joint contract between these parties was impossible." It is true, that the contract, made by the ten for themselves and the others, was an express contract, and if they acted without authority as to the absentees, and the absentees afterwards ratified such action, the contract then became their express contract, just as if they had joined in its original making; but a ratification may be inferred or implied from circumstances,

and this, undoubtedly, is what the court referred to, in speaking of an implied contract. The language of the court, although not strictly accurate, had no tendency to mislead, and such a technical inaccuracy will not warrant a reversal.

The objection to that part of the charge found on line 18 of page 56 of the transcript misstates the charge by leaving out the word "so." The appellants say, "the first sentence of this instruction tells the jury, in general terms, that if defendants, or any of them, employed the plaintiff," etc.; but the words of the charge are, "if the defendants, or any of them, so employed the plaintiff," etc.; that is, by a joint contract, as stated in the next preceding paragraph of the charge. There was no error in this part of the instruction; the court had told the jury, just before, that it was a question of fact for them to say, whether, by a joint contract, the plaintiff had been employed, and the use of the word "contract," in the subsequent part of the charge, means such joint contract, and could not have misled the jury to believe that the plaintiff could recover on any several cause of action. The appellants object, also, to the following instruction, given by the court of its own motion : " If some of the defendants employed the plaintiff by a contract, express or implied, and some of them did not employ the plaintiff by a contract, express or implied, and did not afterwards accept or enjoy the fruits and benefits of his services, if such services were rendered by the plaintiff, then, as to such defendants who did not so employ the plaintiff, and who did not accept and enjoy the fruits of such services, the jury should find for such defendants, even although the plaintiff should be entitled to recover against others."

The objection urged against this part of the charge is that " it undertakes to hold the appellants liable jointly, if, without having entered into the general employment, they simply enjoyed the fruits and benefits of appellee's services." But this part of the instruction does not say who are liable ; it says who are not liable ; it is a charge in favor of the appellants, and rightly tells the jury that they ought to find in favor of

those defendants who neither employed the plaintiff nor had the benefit of his services. Nobody could be liable, except one who was a party to the joint contract, at first, or who afterwards ratified it. There was no error in this part of the instruction.

It is claimed that instructions Nos. 2 and 3, asked for by defendant Hauss, were erroneously refused by the court. These instructions, in substance, alleged that Hauss could not be liable unless he entered into the joint contract of employment charged in the complaint. There was no error in refusing these instructions; the court had already told the jury that the plaintiff must prove a joint contract in order to recover, and, although Hauss was not a party to the contract, and was not present when plaintiff was employed, and had not authorized anybody to act for him, still he would be liable if he afterwards ratified the contract, although he had nothing to do with making it.

The fourth instruction asked for by the defendant Hauss was too narrow. It made the verdict of the jury depend upon the action of Lewis, and whether that action was known to Hauss, when he ratified the contract of employment; it told the jury that Hauss could not be liable, unless, after being acquainted with the action of Lewis, he ratified that action; but if the ten bondsmen present made a contract with the plaintiff for and in the name of all the bondsmen, the question was, Did Hauss, who was not there, afterwards ratify the contract so made for him? If he did, then he was liable, whether he knew anything about the action of Lewis or not; the fourth instruction, which says that Hauss was not liable, unless, knowing of the action of Lewis, he ratified that action, was properly refused.

The fifth instruction asked for by Hauss asserted that there was no evidence that Hauss had ever authorized Lewis to act for him, or had ever ratified any action of Lewis in his behalf. The real question, however, was, whether Hauss had ever ratified the contract made for him by the ten bondsmen; and he

might have done that, whether Lewis had authority to act for him or not, and although entirely ignorant of any action by Lewis. There was no error in refusing the said fifth instruction.

It follows, from what has been said, that there was no substantial error in the modification by the court of instructions Nos. 1 and 2, asked for by the defendant Hauss. The court gave the jury instruction No. 6, asked for by said defendant, and gave also a modification of it, upon the court's own motion. It is objected to this modification that it was an oral addition to a written instruction asked for; an oral modification of a written instruction, asked for by a party, would be a fatal error. *Lung* v. *Deal,* 16 Ind. 349; *Bosworth* v. *Barker,* 65 Ind. 595; *Provines* v. *Heaston,* 67 Ind. 482. But, in this case, it does not appear by the bill of exceptions, that this modification was given orally. The court was authorized to give a written modification. Practice Act, sec. 324. In the absence of any statement to the contrary in the bill of exceptions, the presumption is that what ought to have been done was done, and that the modification was in writing; there was no request that the court should give its own instructions in writing. There was no substantial error in the substance of the modification in question. Hauss's letter to Niblack mentioned eight bondsmen and others; on the bond Hauss signed there were only five names besides his own; it was for the jury to determine what other bondsmen were referred to in the letter. There was no error in mentioning the letter as one of the circumstances to be considered upon the question of Hauss's liability. There is no available error in the record. The judgment of the court below ought to be affirmed.

PER CURIAM.—It is therefore ordered by the court, upon the foregoing opinion, that the judgment of the court below be and it is hereby in all things affirmed, at the costs of the appellants.

NIBLACK, J., did not participate in the decision of this cause.

Petition for a rehearing overruled.