ESTATE OF JOHN ANDERSON *v*. T. MICHAEL SMITH.

[No. 3-773A92. Filed September 17, 1974.]

*Nick Katich, Martin H. Kinney, Addison, Stiles, Greenwald & Kinney,* of Gary, for appellant.

*Kent Arvin, Lieber, Neff & Arvin,* of Indianapolis, *Terrance L. Smith, Smith & Granack,* of Hammond, for appellee.

GARRARD, J.—The plaintiff (Smith) won judgment on his claim for attorney fees in assisting the defendant estate on an inheritance tax determination. This appeal asserts that while the evidence established Smith's employment by the attorney handling the administration of the estate (the estate attorney), it was insufficient to establish authorization or ratification by the estate of that employment.

When such an attack is made we, of course, may not re-weigh the evidence or determine questions of credibility. Our task is to determine whether there is substantial evidence of probative value in support of each necessary element of plaintiff's case. This means there must be competent, relevant, material evidence which would naturally lead, or involuntarily tend to lead, a rational, impartial mind to a conclusion for which there is a substantial reason, rather than one based upon mere guess, conjecture, surmise, possibility or speculation. *Hunnicutt* v. *Boughner* (1967), 141 Ind. App. 669, 231 N.E.2d 159; *Darby* v. *Schoolcraft* (1955), 125 Ind. App. 440, 125 N.E.2d 812; *Vonville* v. *Dexter* (1948), 118 Ind. App. 207, 77 N.E.2d 759.

The undisputed facts disclose that in early December a compromise was reached in litigation involving a foundation which would bring over two million dollars into the estate. A condition of this compromise was that the federal estate liability had to be resolved by December 28. As a prerequisite to meeting that condition, it was necessary to complete determination of the Indiana Inheritance Taxes. At a meeting involving the compromise, an attorney for the foundation indicated he would be willing to accompany the estate attorney to meet with the inheritance tax authorities. He later suggested that the estate attorney contact Smith, a practicing attorney with a reputation of expertise in matters involving Indiana Inheritance Taxes.

The estate attorney telephoned Smith and requested his assistance in securing a meeting with the inheritance tax officials at once in order to present to them the estate's position on liability. Smith complied and on December 9, after a preliminary meeting with the estate attorney, the two met with the Administrator and the Deputy Administrator of the Inheritance Tax Division.

Smith's review of the facts revealed to him that the funds resulting from the compromise were properly taxable under the Indiana estate tax provisions, which resulted in a sub-

stantially lower tax liability than would have resulted from application of the inheritance tax schedules. Both attorneys participated in the discussion, with Smith providing the legal authorities and the estate attorney supplying the specific facts. As a result, the tax authorities were persuaded of the correctness of Smith's position and an appropriate tax determination was made. This concluded Smith's service. It is undisputed that prior to the end of the meeting, neither attorney ever mentioned the amount of fees to be paid Smith, the fee basis upon which Smith desired to provide his services, or whether he was to be paid by the estate or the attorney who employed him.

After the meeting was successfully concluded, the subject came up. The estate attorney stated either that "he would recommend" or that "he thought he could get the administrator to pay" Smith $2,500. Smith assented on the condition that the fee be paid in time for use in the payment of Smith's own income taxes after the first of the year.

Payment was not forthcoming and Smith apparently telephoned the estate attorney on two or three occasions. In March he wrote the estate attorney enclosing a bill and mentioning that tax time was at hand. In May he received a letter from the estate attorney stating that the administrator was on vacation and promising that Smith's bill would be "taken up" with the administrator immediately upon his return. In July, Smith filed his claim in the estate alleging the reasonable value of his services as $25,000.

Viewing the record there is no doubt that Smith rendered valuable service. That his actual time devoted specifically to the tax matter approximated only six to eight hours must not obscure either the importance of the service or the years devoted to acquiring the expertise which enabled him to secure such an expeditious result.

Paramount significance lies, however, in the well-established fact that one's liability to pay for legal services is a matter

of contract. A client is not bound to pay for the services of an assisting attorney whom he did not employ unless he has authorized the employment or consented to it in some binding fashion. *Hogate* v. *Edwards* (1879), 65 Ind. 372; *Cleveland, etc. Ry. Co.* v. *Shrum* (1899), 24 Ind. App. 96, 55 N.E. 515. See, also, annotations in 90 A.L.R. 265 and 78 A.L.R. 2d 318.

The question then is not whether Smith rendered service, or whether he is entitled to be paid. He did and he is. The question is by whom?

In the absence of direct employment, the law will imply the client's promise to pay where he has knowingly acquiesced in the attorney's activity. *Hauss* v. *Niblack* (1881), 80 Ind. 407; *Hogate* v. *Edwards* (1879), 65 Ind. 372.

However, it is essential to a finding of acquiescence that the client have knowledge of the service by the attorney at or before the time it was completed. It is from such knowledge that assent may be implied. *Duckwall* v. *Williams* (1902), 29 Ind. App. 650, 63 N.E. 232; *Moore* v. *Orr* (1893), 10 Ind. App. 89, 37 N.E. 554.

Since there was no evidence that the administrator either directly employed Smith or expressly authorized his employment in advance, the judgment must be set aside unless there was substantial evidence that (a) the estate acquiesced in the employment; (b) it ratified the employment; or (c) the estate attorney had sufficient real or apparent authority to effect the employment on behalf of the estate.

Although the administrator testified, neither side inquired of him either when or how he learned of Smith's participation.

Smith testified that he considered he was employed by the estate but admitted that this was surmise and was not based upon anything communicated to him directly. In *Miles* v. *DeWolf* (1893), 8 Ind. App. 153, 34 N.E. 114, the court held

such a bare statement of conclusion was insufficient to support a judgment.

The estate attorney's testimony at trial, which generally favored the estate, was full of contradictions. The court could well have chosen to disregard some or most of it. Certainly, we may not weigh it.

The entire tenure of Smith's involvment consumed something less than ten days. Accordingly, the time during which he was involved does not itself support a reasonable inference of knowledge as was the case in *State Exchange Bank* v. *Paul* (1915), 58 Ind. App. 487, 108 N.E. 532, where services were rendered throughout a period of more than a year.

The only other evidence bearing on acquiescence and the element of knowledge beforehand on the part of the administrator is: (1) after the hearing was concluded, the estate attorney told Smith, when the subject of fees finally came up, that he would recommend to the administrator that he pay Smith $2,500; (2) that during the months of November and December the estate attorney guessed he met with the administrator once a week; (3) that during the period in question the administrator's son was an associate in the office of the estate attorney; and (4) that the administrator was aware that the attorney for the foundation who recommended Smith had, at the compromise conference, volunteered to accompany the estate attorney. Disregarding the estate attorney's testimony on these items which did not favor Smith's view, the evidence is still not sufficient to naturally or involuntarily lead an impartial mind to conclude, other than by surmise or conjecture, that the administrator had knowledge of the employment prior to its performance. That the attorney would recommend the administrator pay $2,500 does not support, except by speculation, that the administrator had any knowledge he was to pay anything. Nor is this changed by the evidence, without more, that the estate attorney may have seen the administrator during the period in question; that the administrator's son

worked in the same law office, and later delivered the tax payment check to Indianapolis; or that the administrator was aware that a different attorney, one involved in the compromise, had volunteered to attend a meeting with the tax officials. Such attendance, had it occurred, would be presumed due to that attorney's representation of the foundation's interest. *Miles* v. *DeWolf, supra.* Indeed, the attorney for the foundation so testified.

On the other hand, the evidence favorable to plaintiff supports a finding that the administrator did learn of the claim after December, but several months before the claim was filed. There is, however, simply no evidence of any activity on his part which would constitute ratification of the employment. Smith suggests that the mere acceptance of the benefits of his services should be sufficient, and that otherwise the defendant will be unjustly enriched. We are forced to disagree. Since the essence of the attorney-client relationship is one of voluntariness and individual choice, there must be some basis for determining the client's assent. If the administrator desired to disavow Smith's participation, he could hardly insist that the estate pay more than the proper tax or that it reject a waiver of penalty. The results in both *Duckwall* and *Moore* support this position, for in both cases the client had the benefit of the service. We also note there was no evidence that the determination of the tax question was excluded from the probate court's determination of the attorney fees to be paid by the estate to the estate attorney for services during administration of the estate. Thus, it does not necessarily appear that the estate paid nothing for the services involved in securing the tax determination.

Alternatively, it is urged that the estate attorney was authorized to employ additional attorneys at estate expense. Smith points out that the estate attorney, as well as a Chicago firm, were originally hired on the recommendation of yet another attorney. Be that as it may, the record stands undisputed that the administrator hired them. It is also pointed

out that the attorneys first appearing for the estate at the trial of the claim were hired by the estate attorney rather than the administrator. However, the administrator knew in advance of the trial that counsel had been employed and that the reason was the estate attorney's appearance as a witness. The administrator also admitted that the estate attorney was responsible for solving the inheritance tax problem. There is simply nothing substantial in this evidence supportive of any delegation of the estate's authority to hire attorneys.

*Romine* v. *Frank, Admx.* (1954), 124 Ind. App. 465, 118 N.E.2d 900, cited by Smith, is an inapposite case. There the attorney was appealing the insufficiency of a fee allowance, and the fact of his employment was not questioned. There is a dictum in *Brown* v. *Underhill* (1891), 4 Ind. App. 77, 30 N.E. 430, to the effect that under some circumstances an attorney may call to his assistance other attorneys and the client will be liable. While that language might be limited to instances involving acquiescence, we need not so decide. If there are other instances, they are not present here.

Finally, it is urged that the attorney handling the general administration of the estate is a "general agent" within the meaning of *Farm Bureau Mutual Ins. Co.* v. *Coffin* (1964), 136 Ind. App. 12, 186 N.E.2d 180, where it is said:

"When one has the appearance of a general agent the law is clear that a third person dealing with him is not bound to inquire into his specific authority, nor is the principal protected by secret limitations upon the authority of such an agent. The reason for the rule is that where one of two innocent persons must suffer because of the betrayal of a trust reposed in a third, the one who is most at fault should bear the loss. Since the principal put the agent in the position of trust, he is the one who should suffer the detriment." 136 Ind. App. 18; 186 N.E.2d 183.

We believe the basis of the *Farm Bureau* decision was quite different from the issue presented here. In that case the plaintiff called the insurance company's home office seeking

to change and transfer his automobile coverage. He told the girl answering the call that he wanted to transfer his insurance. The call was switched to a second girl who stated she would connect him with a particular agent. This agent took the information and told claimant he was covered. When the loss occurred, the company's defense was that the agent's authority was limited and did not include ability to issue the particular coverage in question in the loss.

Whatever may be the apparent or implied authority of an attorney handling an estate to bind the estate upon matters within the area of his employment, he has no apparent authority, solely by virtue of his employment, to employ other counsel at the estate's expense.

In reaching this conclusion we are aware of the considerations that may deter assisting counsel from contacting the actual client directly. However, in such circumstances, the liability of the employing attorney is apparent. We also think it must be recognized that one reason prompt and open discussion of fee arrangements is advocated by the Canons of Ethics is that early and explicit discussion of the subject all but eliminates problems such as those present in this case.

We conclude that the trial court's judgment must be reversed upon the threshold question of Smith's employment by the administrator; therefore, the amount of Smith's award need not be discussed.

Reversed.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 316 N.E.2d 592.