**Samantha COURTER and Nicholas Courter, Appellant–Plaintiffs,**

v.

**Leonard FUGITT, Appellee–Defendant.**

**No. 15A01–9808–CV–322.**

Court of Appeals of Indiana.

July 16, 1999.

Douglas C. Holland, Lawrenceburg, Indiana, Attorney for Appellant.

William C. Moore, Rocap Witchger & Threlkeld, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

Plaintiffs–Appellants Samantha Courter and Nicholas Courter appeal the trial court's award of attorney fees to Defendant–Appellee Leonard Fugitt pursuant to Indiana Code section 34–4–44.6–9. We reverse.

### Issue [1]

■ Samantha and Nicholas raise the following restated issue for our review: whether the trial court erred in awarding attorney fees to Fugitt based upon the fact that they rejected a qualified offer of settlement he had made to each of them and that the jury returned a verdict for each of them in a monetary amount less than Fugitt's offer.[2]

### Facts and Procedural History

Kimberly Courter and her three minor children, Rachel, Samantha and Nicholas, were involved in an automobile accident with Fugitt in February 1997. Kimberly, in her name only, sued Fugitt for personal injuries related to the accident. Fugitt moved to join the three children as parties to the action. While a ruling on his motion to join was pending, Fugitt extended a qualified offer of settlement to Kimberly, Rachel, Samantha and Nicholas, which stated, in pertinent part, as follows:

> In the event that Nicholas Courter, Samantha Courter and Rachel Courter are joined as parties to this action, the Defendant will further offer $750.00 payment to Samantha Courter and her Attorney and $750.00 to Nicholas Courter and his Attorney. . . . In exchange for such payments, Kim Courter, as parent and natural guardian of Samantha, Nicholas and Rachel Courter will agree to sign a Parents Indemnifying Release and to agree to dismissal of this entire cause, with prejudice. To the extent that Court approval is necessary for the minor's settlements, Kim Courter will agree to take such steps as are necessary so that the Court can approve the settlement.

R. 8.[3] The day after this offer was extended, Fugitt's motion to join was granted. On November 14, 1997, Kimberly filed an amended complaint which included all three children, as well as her husband, Michael, as plaintiffs.

Fugitt's qualified offer of settlement was not accepted, and the case proceeded to trial. The jury found in favor of the plaintiffs, awarding to each Kimberly and Rachel an amount in excess of the amount which had been offered by Fugitt to settle. However, Samantha and Nicholas were awarded only $500.00 each, an amount which was less than the $750.00 Fugitt had offered to settle their cases. All parties then moved for an award of attorney fees.[4] The trial court awarded Kimberly and Rachel each $1,000 from Fug-

---

1. Although not germane to our decision, we are troubled by another of the Courters's allegations of error: that the trial court refused to allow the Courters's counsel to question Fugitt's counsel regarding his fee affidavit. By introducing his fee affidavit, Fugitt's counsel effectively testified as a witness regarding the fees incurred by Fugitt. He thus opened himself to cross-examination by the Courters regarding that "testimony." The right to cross-examine witnesses under oath is a fundamental right which cannot be denied unless waived. *Keesling v. Baker & Daniels,* 571 N.E.2d 562, 567 (Ind.Ct.App.1991), *trans. denied.* Thus, the trial court should have allowed the Courters to question Fugitt's attorney when they made a request to do so.

2. Fugitt also raises several issues as to the completeness and accuracy of the Record of Proceed-

ings filed by the Courters. Although the Record is not a model of strict compliance with our Appellate Rules, none of the deficiencies of which Fugitt complains are so egregious as to preclude our consideration of the merits of this appeal. *See* Ind. Appellate Rule 7.2(C) ("Incompleteness or inadequacy of the record shall not constitute a ground for dismissal of the appeal or preclude review on the merits.").

3. Both the Courters and Fugitt have filed supplemental records in this cause, which we will refer to as "Appellant's Supp. R." and "Appellee's Supp. R.," respectively.

4. The Courters also extended a qualified offer of settlement to Fugitt, which he rejected. Because the jury awards to Kimberly and Rachel were in

itt in attorney fees and awarded Fugitt $1,000 in attorney fees from each Samantha and Nicholas. The Courters now appeal.

### Discussion and Decision

Indiana Code chapter 34–50–1[5] authorizes a party to make a qualified settlement offer in certain tort actions at any time after a complaint has been filed. Ind.Code § 34–50–1–2. A "qualified settlement offer" is defined as "an offer of full and final settlement to resolve all claims and defenses at issue between the offeror ... and the recipient...." Ind.Code § 34–6–2–128. The technical requirements for a qualified settlement offer are that it must: (1) be in writing; (2) be signed by the offeror or his attorney of record; (3) be designated as a qualified settlement offer; (4) be delivered to the recipient or his attorney of record by registered or certified mail or some other method which verifies the date of receipt; (5) set forth the complete terms of the proposed settlement in sufficient detail to allow the recipient to decide whether to accept or reject the offer; (6) include the name and address of the offeror and his attorney of record, if any; and (7) expressly revoke any prior qualified settlement offers. Ind.Code § 34–50–1–4.

If the recipient chooses to accept the qualified settlement offer, the acceptance must be: (1) unconditional; (2) in writing; (3) signed by the recipient or his attorney of record, if any; (4) delivered by registered or certified mail or some other method which verifies the date of receipt; (5) delivered to the offeror or his attorney of record, if any; and (6) delivered not more than thirty days after the recipient received the qualified settlement offer. Ind.Code § 34–50–1–5. If the recipient chooses not to accept the qualified settlement offer, and the "final judgment is less favorable to the recipient than the terms of the qualified settlement offer; the court shall award attorney's fees, costs and expenses to the offeror upon the offeror's motion." Ind. Code § 34–50–1–6(a). The award of attorney's fees "must consist of attorney's fees at a rate of not more than one hundred dollars ($100) per hour and other costs and expenses incurred by the offeror after the date of the qualified settlement offer." Ind.Code § 34–

50–1–6(b). The total award may not exceed $1,000. *Id.* The motion for attorney's fees must be filed not more than thirty days after entry of judgment, and the motion "must be accompanied by an affidavit of the offeror or the offeror's attorney establishing the amount of the attorney's fees and other costs and expenses incurred by the offeror after the date of the qualified settlement offer. The affidavit constitutes prima facie proof of the reasonableness of the amount." Ind. Code § 34–50–1–6(c).

We begin by noting that our research has revealed no cases interpreting or applying this statute to date. However, several general principles apply. Indiana adheres to the "American Rule" with respect to the payment of attorney fees and requires that parties pay their own attorney fees absent an agreement between the parties, statutory authority, or rule to the contrary. *Chavis v. Patton,* 683 N.E.2d 253, 258 (Ind. Ct.App.1997). Thus, the Offers of Settlement statute is in derogation of the common law rule, and, as such, must be strictly construed. *See Pinnacle Properties v. Saulka,* 693 N.E.2d 101, 104 (Ind.Ct.App.1998), *trans. denied.* The cardinal rule of statutory construction is to ascertain and effect the intent of the drafter. *Chavis,* 683 N.E.2d at 259. We presume that "the legislature did not intend by statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication." *Id.* at 258. Statutes are to be interpreted as a whole, giving every word its common and ordinary meaning, and no part of the statute is to be held meaningless if it can be reconciled with the rest of the statute. *Chamness v. Carter,* 575 N.E.2d 317, 319 (Ind.Ct.App.1991).

The Courters contend that the trial court erred in several respects in awarding attorney fees to Fugitt pursuant to his motion. We find the following issue dispositive: whether Fugitt's qualified offer of settlement was effective as to Samantha and Nicholas. The relevant terms are defined as follows:

"Offeror", for purposes of IND. CODE 34–50, means a party to a civil action who

---

excess of their offers, they moved for an award of attorney fees against Fugitt pursuant to the statute. Appellee's Supp. R. 3.

5. Formerly Ind.Code § 34–4–44.6–1 to –9.

makes a qualified settlement offer (as defined in section 128 of this chapter) to a recipient (as defined in section 129 of this chapter) *who is an opposing party in the civil action.*

Ind.Code § 34–6–2–90 (emphasis added).

"Recipient", for purposes of IND. CODE 34–50, means *a party to a civil action* who receives a qualified settlement offer (as defined in section 128 of this chapter) from an offeror (as defined in section 90 of this chapter) who is an opposing party in the civil action.

Ind.Code § 34–6–2–129 (emphasis added).

The Courters allege that Fugitt's offer of settlement was not timely as to Nicholas and Samantha because they were not parties to this action at the time the qualified settlement offer was extended and thus could not be "recipients" of the offer. We agree. A strict construction of the statute clearly contemplates that a qualified settlement offer can be made only to a party to the action. In discussing who are parties to an action, the Indiana Legal Encyclopedia states:

> While, in a larger legal sense, the term "party" or "parties" has been defined as any or all persons who have a right to control the proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from the decision, if an appeal lies, the term "party or parties to the action" is generally used to designate the person or persons who are seeking to establish a right and a person or persons on whom it is sought to impose a corresponding duty or liability, and the term "party to a proceeding" in its ordinary legal meaning is held to embrace such persons only as are parties in a legal sense, and *to have been made or become such in some mode prescribed or recognized by law, so that they are bound by the proceeding.*

22 I.L.E. *Parties* § 1 (emphasis added).

Fugitt's offer was extended on November 5, 1997. At that time, he had moved for the children to be joined as parties to the action, to which the Courters had objected. The trial court had not yet ruled on the motion, and Samantha and Nicholas were not yet parties, as the offer of settlement acknowledges by its express terms. The Courters were not ordered to be joined as parties until an order dated November 6, 1997, the earliest date on which it could be said that the Courters were parties to this action.[6] The timing is very close, we realize, but the requirements of the statute are clear, and on the day Fugitt extended his offer, Samantha and Nicholas were not parties to this action. Thus, Fugitt's offer was premature, and is not saved by the fortuitous fact that Samantha and Nicholas became parties to this action before the thirty-day automatic expiration of the offer. In this particular case, the trial court granted the motion to join within the statutory time frame for acceptance of the qualified offer of settlement. However, it could easily have been the case that the trial court would not have granted the motion to join until some time later, and there could be little doubt that Samantha and Nicholas would not then have been held to the terms of the offer. As the party seeking the benefit of the statute, Fugitt had the burden of following its terms. *See Adoption of H.S.,* 483 N.E.2d 777, 780–81 (Ind.Ct.App.1985) (stating, in the context of a Uniform Child Custody Act cause, that "one who seeks the benefit of a statutory proceeding must comply with all procedural terms of the statute...."). Thus, he should not have made a qualified offer of settlement to the children until and unless they were made parties to the action. The trial court erred in awarding attorney fees to Fugitt against Samantha and Nicholas on the basis of the "less favorable" jury verdict.

Reversed.

SHARPNACK, C.J., and DARDEN, J., concur.

---

6. Fugitt argues that since the Courters extended a qualified offer of settlement to him on November 12, 1997, prior to the filing of their amended complaint, the timeliness argument is inconsistent. We do not think it to be so, as the actual filing of the amended complaint was a mere formality to comply with the trial court's order of November 6. In any event, Fugitt has not raised any issue as to the appropriateness of the fee award against him based upon that offer.