**Jill SCOTT, Appellant–Plaintiff,**

v.

**Jeremy IRMEGER, Appellee–Defendant.**

No. 08A04–0603–CV–121.

Court of Appeals of Indiana.

Jan. 17, 2007.

Lee F. Baker, Troy K. Rivera, Nunn Law Office, Bloomington, IN, Attorneys for Appellant.

James H. Austen, Starr Austen Tribbett Myers & Miller, Logansport, IN, Attorneys for Appellee.

John B. Drummy, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Amicus Curiae, The Insurance Institute of Indiana.

James D. Johnson, Rudolph, Fine, Porter & Johnson, LLP, Evansville, IN, Attorneys for Amicus Curiae, Defense Trial Counsel of Indiana.

## OPINION

MATHIAS, Judge.

Jill Scott ("Scott") brings this appeal challenging the Carroll Circuit Court's order awarding Jeremy Irmeger ("Irmeger") attorney's fees under the qualified settlement offer statute when Irmeger did not personally pay the attorney's fees. Concluding that a defendant may incur attorney's fees even though a third party pays such fees on the defendant's behalf, we affirm.

### Facts and Procedural History[1]

In September 2003, a dog allegedly attacked Scott on Irmeger's property. Scott sought compensation for her injuries in a negligence action that she filed on March 18, 2004, in the Carroll Circuit Court. Irmeger's homeowner's insurance carrier, Indiana Farmers Mutual Insurance Company ("Farmers Mutual"), retained attorney James Austen ("Austen") to represent Irmeger. Before trial, on June 14, 2005, Irmeger made a qualified settlement offer to Scott in the amount of $15,000, to be paid by Farmers Mutual on his behalf. Scott refused this offer, and the case proceeded to trial. On November 15, 2005, the jury returned a verdict in Irmeger's favor, awarding no damages to Scott.

On December 15, 2005, Irmeger filed a motion for an award of attorney's fees under Indiana Code section 34-50-1-6 (1999), known as the Qualified Settlement Offer statute ("QSO Statute"). Attached to the motion was an affidavit signed by Austen, verifying that the value of his services after tendering the settlement offer to Scott exceeded $1,000. The trial court summarily granted Irmeger's motion the next day, awarding him the full $1,000 of attorney's fees allowed under the QSO Statute.

Scott filed a motion to correct error on December 22, 2005, and the trial court held a hearing on the matter on January 30, 2006. Irmeger testified that Austen's fees were paid entirely by Farmers Mutual and that he had not personally paid any of the legal fees. On February 6, 2006, the trial court denied Scott's motion to correct error. Scott filed her notice of appeal on March 3, 2006. The Insurance Institute of Indiana and the Defense Trial Counsel of Indiana filed an amici curiae brief. Additional facts will be provided as necessary.

### Standard of Review

The interpretation of a statute is a question of law reserved for the courts. *Shepherd v. Carlin*, 813 N.E.2d 1200, 1203 (Ind. Ct.App.2004). We will review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.* The primary goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Id.* The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless indicated by statute. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.*

---

1. We remind Scott's counsel that under Indiana Rule of Appellate Procedure 50(A)(2) (2006), "The appellant's Appendix shall contain a table of contents."

## Discussion and Decision

This case involves interpreting the QSO Statute, which, in part, provides:

(a) If:

(1) a recipient does not accept a qualified settlement offer; and

(2) the final judgment is less favorable to the recipient than the terms of the qualified settlement offer; the court shall award attorney's fees, costs, and expenses to the offeror upon the offeror's motion.

(b) An award of attorney's fees, costs, and expenses under this section must consist of attorney's fees at a rate of not more than one hundred dollars ($100) per hour and other costs and expenses incurred by the offeror after the date of the qualified settlement offer. However, the award of attorney's fees, costs, and expenses may not total more than one thousand dollars ($1,000).

Ind.Code § 34–50–1–6 (1999).

Because Indiana adheres to the "American Rule," meaning that each party pays for his or her own attorney's fees absent an agreement or statutory authority to the contrary, statutes that vary from this common law rule must be strictly construed. *Vasquez v. Phillips,* 843 N.E.2d 61, 64 (Ind.Ct.App.2006). "We presume that 'the legislature did not intend by statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication.'" *Courter v. Fugitt,* 714 N.E.2d 1129, 1132 (Ind.Ct.App.1999) (quoting *Chavis v. Patton,* 683 N.E.2d 253, 258 (Ind.Ct.App. 1997)).

Scott contends that the trial court erred in awarding Irmeger attorney's fees, as the QSO Statute provides that only an offeror who has "incurred" attorney's fees and other costs after making a qualified settlement offer can recover them. She

maintains that by using the word "incurred," the General Assembly did not intend for a party to receive a windfall of attorney's fees that he never actually paid.

In advancing the proposition that "incurred" signifies "paid," Scott relies heavily on our decision in *Vasquez.* In that case, we reversed the trial court's award of attorney's fees that relied exclusively on the attorney's affidavit listing the expenses he had accrued in working on the case after making the qualified settlement offer. 843 N.E.2d at 64. We found it significant that the affidavit disclosed the attorney's expenses but not the fees that the plaintiff/offeror had actually incurred. *Id.* We held that "[a]ccording to the plain statutory language [. . .] 'the trial court is required to award the attorney's fees, costs, and expenses actually incurred by the offeror.'" *Id.* (quoting *Shepherd v. Carlin,* 813 N.E.2d 1200, 1204 (Ind.Ct.App.2004)). Upon review of *Vasquez,* we cannot conclude that this case stands for the proposition that "incurred" signifies "paid." Rather, in that case we held that a party may only recover the reasonable attorney's fees that he or she incurred rather than the value of the expenses that his or her attorney incurred.

Our decision in *Harco, Inc. of Indianapolis v. Plainfield Interstate Family Dining Associates,* 758 N.E.2d 931 (Ind.Ct. App.2001), lends further support to the proposition that "incurred" does not necessarily denote "paid." *Harco* involved a defendant's recovery of attorney's fees under Indiana Code section 34–52–1–1 from a plaintiff litigating in bad faith. In *Harco,* the defendant's operating company, a nonparty to the suit, was billed for and actually paid all of the defendant's attorney's fees. The plaintiff claimed that Indiana Code section 34–52–1–1 only allowed the "prevailing party" to recover its attorney's fees. *Id.* at 944. We disagreed with plain-

tiff's interpretation and affirmed the trial court. *Id.* In our analysis, we concluded that "the trial court is not constrained to award attorney fees only when those fees have been directly billed to and paid by the party. Rather, the relevant inquiry is whether a party has *incurred* attorney fees." *Id.* (citations omitted) (emphasis in original).

Irmeger's situation is similar to that of the defendant in *Harco* in that he did in fact "incur" a fee obligation to his attorney, Austen. Austen had an ethical obligation to represent Irmeger, even though Farmers Mutual had agreed to pay his fees. *See Cincinnati Ins. Co. v. Wills,* 717 N.E.2d 151, 161 (Ind.1999); see also Ind. Professional Conduct Rule 5.4(c) (2006). As Irmeger affirmatively made use of Austen's services, the law implies that Irmeger promised to pay for a reasonable attorney's fee. *See Estate of Anderson v. Smith,* 161 Ind.App. 480, 484, 316 N.E.2d 592, 594 (Ind.Ct.App.1974). Therefore, Irmeger incurred the obligation to pay Austen's fees even though Farmer's Mutual actually paid them on his behalf.

Scott further contends that awarding attorney's fees to Irmeger is the equivalent of awarding attorney's fees to Farmers Mutual, a nonparty to the suit. She claims that the trial court's broad interpretation of the QSO Statute contravenes its plain language, which does not provide for awarding attorney's fees to nonparties. Scott maintains that because the QSO Statute only provides that an offeror, who is a party to the proceeding, can recover his incurred attorney's fees, the General Assembly did not intend for a nonparty, such as Farmers Mutual, to recover its costs.

It is true that "[w]hen certain items or words are specified or enumerated in a statute, then, by implication, other items or words not so specified or enumer-

ated are excluded." *Clay Twp. of Hamilton County v. Clay Twp. Reg'l Waste Dist.,* 838 N.E.2d 1054, 1066 (Ind.Ct.App.2005) (internal quotation omitted). However, we must look to the underlying policy behind the QSO Statute to determine whether it would be disserved if the force of the statute could be avoided in situations where a nonparty pays the party's attorney's fees. In *Shepherd,* we analyzed the purpose of the QSO Statute and adopted the view that "in this era of congested dockets, the legislature intended to force litigants, especially litigants with claims that are small, to make rational valuations of their cases, rather than clogging our judicial system with small cases that could and should be settled." 813 N.E.2d at 1204 n. 2. (internal quotation omitted). In line with this precedent, we conclude that the General Assembly's purpose behind enacting the QSO Statute was to provide the offering parties with leverage to encourage the other party to seriously evaluate the merits of his or her case.

In trial practice, many defendants have their attorney's fees paid by their automobile insurance carrier or their homeowner's insurance carrier. Plaintiffs oftentimes arrange for contingent fee contracts in personal injury cases, which would not require them to actually pay the attorney's fees before a judgment is rendered. If these parties were unable to depend on the QSO Statute for leverage to encourage the opposing party to evaluate the merits of the claim, the practical effect would be to undermine the entire purpose behind the QSO Statute. We further note that public policy favors encouraging parties to purchase insurance to provide a source of recovery for potential victims, rather than punishing them by refusing to award them attorney's fees. *See N. Ind. Pub.*

*Serv. Co. v. Bloom,* 847 N.E.2d 175, 190 (Ind.2006) (Dickson, J., concurring).

Based on similar public policy arguments, "Indiana courts have repeatedly held that a party is not required to personally pay the bills for his representation to be eligible for an award of attorney's fees." *Rand v. City of Gary,* 834 N.E.2d 721, 722 (Ind.Ct.App.2005); see also *Poulard v. Lauth,* 793 N.E.2d 1120, 1124 (Ind.Ct.App. 2003). For example, in *Poulard,* our court determined that Indiana Code section 34–7–7–7, which allows a "prevailing defendant" to recover attorney's fees, likewise allows defendants whose insurers have paid such fees to recover. 793 N.E.2d at 1125. We observed that "the purpose of [this] statutory attorney's fees provision is to place the financial burden of defending against so-called SLAPP[2] actions on the party abusing the judicial system by bringing a SLAPP lawsuit." *Id.* at 1124. Denying a motion for attorney's fees for a defendant whose insurer paid such costs would disserve this statutory purpose. *Id.*

Our supreme court held in *Beeson v. Christian,* 594 N.E.2d 441, 443 (Ind.1992) that it was not an abuse of discretion for the trial court to award appellate attorney's fees, even though defendant's attorney testified he would not charge her any fees for his work done on appeal. Our supreme court first examined the policy behind Indiana Code section 31–1–11.5–6,[3] which allowed courts to award attorney's fees in dissolution actions where a party could not otherwise afford an attorney. *Id.* at 443. The court then concluded that this "public policy would be undermined if [it] were to hold that a party must be personally obligated to pay attorney fees before the trial court could order the other party to pay those fees." *Id.* "Such a

policy might, in some circumstances, effectively eliminate the right to appeal in dissolution proceedings," the court determined. *Id.*

We likewise conclude that the public policy of persuading plaintiffs to carefully evaluate the merits of their claim before insisting on proceeding to trial would be undermined if we were to hold that the QSO Statute does not permit a defendant's recovery where a third party has paid the attorney's fees on his or her behalf. Furthermore, we find no support in our case law analyzing similar recovery provisions that interprets the word "incurred" as "personally paid." Accordingly, we conclude that the trial court appropriately awarded Irmeger attorney's fees under the QSO Statute.

Affirmed.

KIRSCH, C.J., concurs.

SHARPNACK, J., dissents with separate opinion.

SHARPNACK, Judge, dissenting.

I respectfully dissent because I conclude that the trial court erred in its interpretation of Ind.Code § 34–50–1–6, the Qualified Settlement Offer statute ("QSO statute"). I conclude that under the plain language of the statute Irmeger did not incur attorney fees and is not entitled to an award of $1,000 under the QSO statute.

Resolution of this issue requires that we interpret the QSO statute. "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *St. Vincent Hosp. & Health Care Center, Inc. v. Steele,* 766 N.E.2d 699, 703–704 (Ind.2002). If a stat-

---

**2.** SLAPP is an acronym for "strategic lawsuit against public participation." *Poulard,* 793 N.E.2d at 1122 n. 2.

**3.** Repealed in 1997.

ute is unambiguous, we must give the statute its clear and plain meaning. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001).

Moreover, Indiana adheres to the "American Rule" with respect to the payment of attorney fees and requires that parties pay their own attorney fees absent an agreement between the parties, statutory authority, or rule to the contrary. *Courter v. Fugitt,* 714 N.E.2d 1129, 1132 (Ind.Ct.App.1999). Thus, the QSO statute is in derogation of the common law rule and, as such, must be strictly construed. *Id.* The cardinal rule of statutory construction is to ascertain and effect the intent of the drafter. *Id.* We presume that the legislature did not intend by statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication. *Id.*

The QSO statute provides in part:

(a) If:

(1) a recipient does not accept a qualified settlement offer; and

(2) the final judgment is less favorable to the recipient than the terms of the qualified settlement offer;

the court shall award attorney's fees, costs, and expenses to the *offeror* upon the offeror's motion.

(b) An award of attorney's fees, costs, and expenses under this section must consist of attorney's fees at a rate of not more than one hundred dollars ($100) per hour and other costs and expenses *incurred by the offeror* after the date of the qualified settlement offer. However, the award of attorney's fees, costs, and expenses may not total more than one thousand dollars ($1,000).

I.C. § 34–50–1–6 (emphasis added). " 'Offeror', for purposes of IC 34–50, means a party to a civil action who makes a qualified settlement offer (as defined in section 128 of this chapter) to a recipient (as defined in section 129 of this chapter) who is an opposing party in the civil action." Ind. Code § 34–6–2–90. Black's Law Dictionary defines "incur" as: "To have liabilities cast upon one by act or operation of law, as distinguished from contract, where the party acts affirmatively. To become liable or subject to, to bring down upon oneself, as to incur debt, danger, displeasure and penalty, and to become through one's own action liable or subject to." BLACK'S LAW DICTIONARY 768 (6th ed.1990).

Here, Irmeger was a party to the civil action, but Irmeger did not "incur" attorney fees. Appellant's App. p. 45. Rather, his insurance company incurred the attorney fees. The text of the statute on its face does not include a nonparty as an offeror nor provide for the recovery of attorney fees not incurred by the offeror. Notably, the statute does not provide for the recovery of attorney fees incurred "on behalf of an offeror" nor, more to the point perhaps, incurred "by an insurer providing a defense to an offeror."

The reality of insurance company provided defense and contingent fee prosecution of tort claims was surely known to the legislature and those seeking legislation to attach cost incentive factors to settlement efforts. The language of the statute does not address that reality. We should not distort our language to "rewrite" the statute. "We may not ignore the clear language of a statute and 'in effect[ ] rewrite a statute in order to render it consistent with our view of sound public policy.' " *Myers v. State,* 714 N.E.2d 276, 284 (Ind. Ct.App.1999) (quoting *Robinson v. Monroe County,* 663 N.E.2d 196, 198 (Ind.Ct.App. 1996)), *trans. denied.* Strictly construing

the QSO statute, I conclude that the trial court erred by awarding Irmeger the $1,000 of attorney fees. Consequently, I would reverse. See, *e.g., Courter,* 714 N.E.2d at 1133 (strictly construing the QSO statute and holding that the trial court erred by awarding attorney fees because the children were not parties to the action at the time of the qualified settlement offer).