Terri A. HANNINEN, Appellant,

v.

Eric KOCH, Administrator of the Estate of Carrie A. Gardner, Deceased, Appellee.

No. 36A01–0611–CV–503.

Court of Appeals of Indiana.

June 22, 2007.

---

Bradford J. Smith, Nunn Law Office, Bloomington, IN, Attorney for Appellant.

M. Michael Stephenson, Brady J. Rife, McNeely Stephenson Thopy & Harrold, Shelbyville, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Terri Hanninen appeals the trial court's grant of attorney's fees, costs, and expenses to the estate of Carrie A. Gardner Jackson. We affirm.

### Issues

Hanninen raises two issues, which we restate as:

I. whether the statute authorizing the award of attorney's fees in this case is unconstitutional; and

II. whether the statute authorized the award of attorney's fees to an at-

torney hired by an insurance company.

### Facts

Hanninen and Gardner Jackson were involved in tort litigation. On June 26, 2006, prior to trial, Gardner Jackson made a qualified settlement offer ("QSO") of $5,213.94 to Hanninen, and she rejected the offer. The case went to trial, and after the two-day trial, a jury returned a verdict in favor of Gardner Jackson.

On September 20, 2006, Gardner Jackson filed a motion for award of attorney's fees, costs, and expenses. Over Hanninen's objection, the trial court granted the motion and awarded $1,000. Hanninen now appeals.

### Analysis

#### I.  Constitutional Claims

##### A.  Article 1, Section 12

■ Hanninen first argues that Indiana Code Section 34–50–1–6 ("the QSO statute") chills tort litigants' rights to access Indiana courts "by putting a price on justice" and requiring them to pay for exercising their right to a jury trial. Appellant's Br. p. 6. She contends that this burden violates Article 1, Section 12 of the Indiana Constitution, which provides:

> All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

Indiana Code Section 34–50–1–6(a) requires a trial court to award attorney's fees, costs, and expenses to a settlement offeror upon his or her motion if the recipient of a qualified settlement offer does not accept the offer and the final judgment is less favorable to the recipient than the terms of the offer. "However, the award of attorney's fees, costs, and expenses may not total more than one thousand dollars ($1,000)." Ind.Code § 34–50–1–6(b).

Similar to mandatory mediation, the possibility of paying up to $1,000 in attorney's fees after rejecting a more favorable offer than what was awarded at trial is not an impediment to a party's access to courts. See *Fuchs v. Martin,* 845 N.E.2d 1038, 1041 (Ind.2006). The purpose of the QSO Statute is "to provide the offering parties with leverage to encourage the other party to seriously evaluate the merits of his or her case." *Scott v. Irmeger,* 859 N.E.2d 1238, 1241 (Ind.Ct.App.2007). Although a party may consider the possibility of paying the fees when deciding whether to accept or reject a QSO, the possibility of such does "not prevent a party from obtaining a judicial resolution of a case nor does it obstruct a party's access to the courts." *Fuchs,* 845 N.E.2d at 1041.

As explained in *State v. Laramore,* 175 Ind. 478, 484, 94 N.E. 761, 763 (1911), Article 1, Section 12 was intended to prohibit "gratuities, or exactions, given or demanded for the direct purpose of influencing the course of legal proceedings." Here, Hanninen sought and received a jury trial. She does not contend that the subsequent attorney's fee order was for the purpose of influencing the course of legal proceedings. She has not established that the QSO statute violates Article 1, Section 12 of the Indiana Constitution.

##### B.  Article 1, Section 23

■ Hanninen also argues that the QSO statute violates Article 1, Section 23 of the Indiana Constitution because tort litigants are treated differently from other civil liti-

gants.[1] *See* I.C. § 34–50–1–1(a) ("This chapter applies only to actions in tort...."). Article 1, Section 23 provides, "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

> Our supreme court has held:
>
> Article 1, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics [that] distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*Ledbetter v. Hunter,* 842 N.E.2d 810, 812–13 (Ind.2006) (quoting *Collins v. Day,* 644 N.E.2d 72, 80 (Ind.1994)) (alteration in original).

Hanninen contends that parties seeking relief for a tort are treated differently than those seeking relief in other civil actions, including contracts.[2] Parties to a contract action presumably have the ability to include provisions for the payment of attorney's fees in the event of breach when they draft the agreement. Parties to tort litigation, however, do not have a similar opportunity to allocate attorney's fees prior to the commission of the tort. For that reason, there is a difference between tort litigants and contract litigants. *See Horseman v. Keller,* 841 N.E.2d 164, 172 (Ind.2006) (analyzing election statutes for constitutionality under Article 1, Section 23). Second, the QSO statute reasonably relates to this difference by allowing litigants to recover up to $1000 in attorney's fees in certain circumstances. *See id.* Finally, any tort litigant—plaintiff or defendant—who rejects a QSO and receives a final judgment that is less favorable than the offer shall be required to pay up to $1000 in fees upon a motion by the offeror. The preferential treatment, i.e. receipt of attorney's fees, is equally available to any offeror when a QSO is rejected and the offeree receives a less favorable final judgment. *See id.* at 173. Accordingly, the QSO statute does not violate Article 1, Section 23 of the Indiana Constitution.

## II. Award of Fees to Attorney Hired by Insurance Company

■ Hanninen argues that the QSO statute does not permit the payment of fees to a party who has not actually incurred any fees. Hanninen contends that because Gardner Jackson's insurance company, not Gardner Jackson, employed an attorney to defend her, she did not incur any fees and may not recover such under the QSO statute. Hanninen also argues

---

1. Hanninen also argues that the QSO statute is unconstitutional because "a jury could find a defendant tortfeasor 100% at fault yet still return a verdict less than the amount offered...." Appellant's Br. p. 8. However, in this case, the jury returned a verdict in favor of Gardner Jackson, the defendant tortfeasor. Although the QSO statutes concern final judgments and not the allocation of fault, we decline to address this argument because it would be tantamount to an advisory opinion. *INS Investigations Bureau, Inc. v. Lee,* 709 N.E.2d 736, 742 (Ind.Ct.App.1999) ("We will not speculate as to possible public policy conundrums which are not apparent in this case."), *trans. denied.*

2. We will analyze the constitutionality of the statute in terms of torts and contracts because those are the civil actions most commonly associated with monetary damages and the specific civil actions referenced by Hanninen.

that the insurance company who incurred the fees was not the offeror under the language of the statute.

The interpretation of a statute is a question of law reserved for the courts. We will review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. The primary goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute. It is just as important to recognize what the statute does not say as it is to recognize what it does say. If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation.

*Vasquez v. Phillips,* 843 N.E.2d 61, 63 (Ind.Ct.App.2006) (citations omitted).

The part of the statute upon which Hanninen relies provides:

> A motion for an award of attorney's fees, costs, and expenses under this section must be filed not more than thirty (30) days after entry of judgment. The motion must be accompanied by an affidavit of the offeror or the offeror's attorney establishing the amount of the attorney's fees and other costs and expenses *incurred by the offeror* after the date of the qualified settlement offer. The affidavit constitutes prima facie proof of the reasonableness of the amount.

I.C. § 34–50–1–6(c) (emphasis added). We recently addressed similar arguments in *Scott v. Irmeger,* 859 N.E.2d 1238 (Ind.Ct. App.2007). In that case, Irmeger was represented by an attorney, Austen, who was paid by Irmeger's homeowner's insurance carrier. Prior to trial Irmeger made a settlement offer to Scott, and Scott rejected the offer. A jury returned a verdict in favor of Irmeger, who sought $1000 in fees, which the trial court awarded. Scott appealed, making the same arguments that Hanninen now makes on appeal.

In *Scott,* the majority rejected both of Scott's arguments and concluded:

> Austen had an ethical obligation to represent Irmeger, even though Farmers Mutual had agreed to pay his fees. *See Cincinnati Ins. Co. v. Wills,* 717 N.E.2d 151, 161 (Ind.1999); *see also* Ind. Professional Conduct Rule 5.4(c) (2006). As Irmeger affirmatively made use of Austen's services, the law implies that Irmeger promised to pay for a reasonable attorney's fee. *See Estate of Anderson v. Smith,* 161 Ind.App. 480, 484, 316 N.E.2d 592, 594 (Ind.Ct.App.1974). Therefore, Irmeger incurred the obligation to pay Austen's fees even though Farmer's Mutual actually paid them on his behalf.

*Scott,* 859 N.E.2d at 1241. Based on this rationale, we agree with the Scott majority in that Gardner Jackson incurred an obligation to pay her attorney's fees even if her insurance company ultimately paid them on her behalf.

Regarding payment to a non-party, the *Scott* majority looked "to the underlying policy behind the QSO Statute to determine whether it would be disserved if the force of the statute could be avoided in situations where a nonparty pays the party's attorney's fees." *Id.* The majority concluded:

> the public policy of persuading plaintiffs to carefully evaluate the merits of their claim before insisting on proceeding to trial would be undermined if we were to hold that the QSO Statute does not permit a defendant's recovery where a third party has paid the attorney's fees on his or her behalf.

*Id.* at 1242. Likewise, to preclude payment to a non-party under these circumstances would undermine the purpose of the statute to encourage parties to carefully evaluate the merits of a claim before insisting on going to trial. The statute permitted recovery of attorney's fees incurred by Gardner Jackson's attorney even if he was ultimately paid by Gardner Jackson's non-party insurance company.

### Conclusion

The trial court properly awarded Gardner Jackson $1000 in attorney's fees, costs and expenses. We affirm.

Affirmed.

NAJAM, J., and RILEY, J., concur.