

IN THE

# Court of Appeals of Indiana

Indiana Bureau of Motor Vehicles
and Joseph B. Hoage, in his official capacity
as Commissioner of the Indiana Bureau
of Motor Vehicles,

*Appellants-Defendants,*



FILED

Apr 09 2024, 11:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Fitz Simmons, A.G., S.D., C.O., K.W.,
W.A., B.W., K.H., S.R., J.T., K.O., S.O., and J.L.,[1]

*Appellees-Plaintiffs.*

April 9, 2024

Court of Appeals Case No.
23A-PL-899

---

[1] Although Plaintiff J.L. did not participate in this appeal, J.L. is a party on appeal. *See* Ind. Appellate Rule 17(A) (stating that a party of record in the trial court or administrative agency shall be a party on appeal).

Appeal from the
Monroe Circuit Court

The Honorable
Holly M. Harvey, Judge

Trial Court Cause No.
53C06-2106-PL-1347

**Opinion by Senior Judge Shepard**
Judges Bradford and Felix concur.

**Shepard, Senior Judge.**

[1] The Appellees initiated litigation seeking to compel the Indiana Bureau of Motor Vehicles and Commissioner Joseph B. Hoage to include a third gender option on driver's licenses and identification cards. The trial court so ordered. Finding error, we reverse and remand with instructions.

## Facts and Procedural History

[2] In 2019, BMV began recognizing a third gender option on state driver's licenses and identification cards. This option was represented by an "X" and meant "Not Specified." That same year, the Appellees applied to amend the gender markers on their state credentials to "X" in order to reflect their nonbinary gender. However, in 2020, BMV stopped offering or processing transactions with the gender indicator of "X." Consequently, it denied the Appellees' applications.

[3] Appellees Simmons, S.R., K.H, A.G., and S.D. sought administrative review of the denial. The Administrative Law Judge issued her recommended order affirming BMV's denial in February 2021.

[4] In June, all Appellees filed a complaint against BMV seeking declaratory and injunctive relief from BMV's binary-only policy. The complaint alleged violations of the Administrative Rules and Procedures Act (ARPA), the Fourteenth Amendment's Equal Protection and Due Process Clauses, and the First Amendment. It included a petition for judicial review of the ALJ's decision concerning Simmons, S.R., K.H, A.G., and S.D. The BMV moved to dismiss the complaint, and the court granted the motion as to the First Amendment claim but denied the motion as to the remainder. The court subsequently denied BMV's motion for summary judgment and granted the Appellees' petition for judicial review and motion for summary judgment. The court then entered a declaratory judgment and permanently enjoined BMV from refusing to allow non-binary designations on state credentials. BMV appeals.[2]

## Issues

I. Whether the court erred by granting judicial review; and

---

[2] We held oral argument in this case on January 23, 2024, in the Court of Appeals courtroom. We thank counsel for their valuable advocacy.

II.  Whether the court erred in granting summary judgment for the Appellees.

# Discussion and Decision

## I. Judicial Review

BMV contends the trial court erred in granting the petition for judicial review of the ALJ's decision regarding Simmons, S.R., K.H, A.G., and S.D. because they failed to comply with the processes of the Administrative Orders and Procedures Act (AOPA).  Specifically, BMV argues the request for review was untimely.

The AOPA requires a party to petition for judicial review within thirty days after service of notice of the agency action.  Ind. Code § 4-21.5-5-5 (1986).  A party who fails to timely petition waives its right to judicial review.  Ind. Code § 4-21.5-5-4(b)(1) (1986).  This Court has found it significant that the AOPA "'establishes the exclusive means for judicial review of an agency action'" and that it does not include a provision similar to Appellate Rule 1 that permits deviation from the AOPA's procedural rules.  *Hunter v. State, Dep't of Transp.*, 67 N.E.3d 1085, 1091 (Ind. Ct. App. 2016) (quoting Ind. Code § 4-21.5-5-1 (1994)), *trans. denied*.  Citing Indiana Code section 4-21.5-2-2 (1986), the Court further emphasized that a person may waive any right conferred upon them by AOPA and concluded therefore that "there is no mechanism allowing the trial court to resurrect a waived right to judicial review."  *Hunter*, 67 N.E.3d at 1091.

Here, the ALJ issued her recommended order in February 2021, and the five Appellees neither objected nor sought reconsideration of that order.  Likewise,

they did not seek judicial review at any time before this lawsuit was filed in June 2021. Thus, their petition was untimely. The trial court erred in excusing the untimeliness. Accordingly, we reverse the court's grant of the petition for judicial review.

[8] Nevertheless, the Appellees' procedural waiver of their right to judicial review does not adversely affect their claims here because these five Appellees, indeed the Appellees as a whole, have brought a declaratory judgment action, which is distinct from judicial review of the decision of an administrative agency.

[9] The purpose of the Uniform Declaratory Judgment Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations . . . ." Ind. Code § 34-14-1-12 (1998). More particularly, a declaratory judgment action is a discrete action in which a person whose rights, status, or other legal relations are affected by a statute may seek a determination of any question of construction or validity arising under the statute to obtain a declaration of rights, status, or other legal relations thereunder. Ind. Code § 34-14-1-2 (1998).

[10] Accordingly, these Appellees are not challenging an agency action subject to judicial review but rather are contesting BMV's binary-only policy. They asked the court to construe Indiana Code section 9-24-11-5, enter a declaratory judgment that BMV's enforcement of the statute violated their rights, and permanently enjoin BMV from enforcing the policy.

This Court has previously determined that "a challenge to the content of an agency's rules and regulations was not properly raised in a petition for judicial review[] but is more appropriately considered in a declaratory judgment action." *Ind. Dep't of Env't Mgmt. v. Chem. Waste Mgmt. of Ind., Inc.*, 604 N.E.2d 1199, 1203 (Ind. Ct. App. 1992) (citing *Ind. & Mich. Elec. Co. v. Public Serv. Comm'n*, 495 N.E.2d 779 (Ind. Ct. App. 1986), *trans. denied*), *trans. denied*. The Court further noted our Supreme Court's observation that "'under some circumstances a declaratory judgment is an available alternative to exhaustion of administrative remedies and judicial review.'" *Chem. Waste Mgmt. of Ind.*, 604 N.E.2d at 1203 (quoting *State ex. rel. State Election Bd. v. Superior Ct. of Marion Cnty.*, 519 N.E.2d 1214 (Ind. 1988)).

A recent decision of our Supreme Court sheds further light on this subject. There, the Court considered whether the merits of a declaratory judgment action should have been considered by the trial court where the plaintiff had filed for judicial review and included a claim for declaratory judgment. The trial court denied the declaratory judgment request partly because the plaintiff did not file a separate complaint for a declaratory judgment. Concluding the trial court should have considered the declaratory judgment request on the merits, the Supreme Court emphasized the importance of the judicial system's principle of judicial economy and stated, "While a party typically can only obtain judicial review of issues raised before an agency, [the plaintiff] was not seeking judicial review of this issue—it was seeking a declaratory judgment. . . . [The plaintiff] could have filed this declaratory judgment request as a separate

action . . . ." *ResCare Health Servs., Inc. v. Ind. Fam. & Soc. Servs. Admin. - Off. of Medicaid Pol'y & Plan.*, 184 N.E.3d 1147, 1152 (Ind. 2022); *see also Wilson v. Bd. of Ind. Emp. Sec. Div.*, 270 Ind. 302, 305, 385 N.E.2d 438, 441 (1979) (holding that, given the constitutional character of the issue presented, it was not necessary for plaintiff "to press the issue through administrative channels as a precondition to judicial review" where her action for declaratory judgment and injunctive relief was constitutional challenge to procedures employed by board in suspending and terminating benefits).

[13] Thus, we conclude that while the petition for judicial review was untimely filed and therefore improvidently granted, the action for declaratory judgment and injunctive relief as it relates to Simmons, S.R., K.H, A.G., and S.D. may nevertheless proceed as it is a distinct action.

## II. Summary Judgment

[14] BMV next asserts the trial court erred by entering summary judgment in favor of the Appellees on their claims that BMV violated the Administrative Rules and Procedures Act (ARPA) and violated the Appellees' rights to equal protection and due process. We address each argument in turn.

[15] When reviewing the grant or denial of summary judgment, our standard of review is similar to that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *City of Indianapolis v. Cox*, 20 N.E.3d 201, 205-06 (Ind. Ct. App. 2014), *trans. denied*.

We consider only those materials properly designated pursuant to Trial Rule 56, and we construe all factual inferences and resolve all doubts as to the existence of a material issue in favor of the non-moving party. *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 424 (Ind. 2015). We review a summary judgment de novo, and the fact that the parties have filed cross-motions for summary judgment does not alter the standard of review or change our analysis; "the party that lost in the trial court has the burden of persuading us that the trial court erred." *Speedy Wrecker Serv., LLC v. Frohman*, 148 N.E.3d 1005, 1008 (Ind. Ct. App. 2020).

## A. Violation of ARPA

[16] In entering summary judgment for the Appellees on this issue, the trial court concluded that BMV's cessation of allowing a gender designation of "X" on state credentials constituted a new administrative rule that was not promulgated pursuant to the ARPA and was therefore void.

[17] It is well settled that administrative agencies may make reasonable rules and regulations to apply and enforce legislative enactments (i.e., statutes). *Ind. Dep't of Env't Mgmt. v. Twin Eagle LLC*, 798 N.E.2d 839, 847 (Ind. 2003). However, an administrative agency may only regulate by a new rule if it has first complied with the proper rulemaking procedures set forth in the ARPA, which include public hearings and review by executive branch officials. *Villegas v. Silverman*, 832 N.E.2d 598, 608 (Ind. Ct. App. 2005).

[18] BMV argues its discontinuation of the use of the "X" gender designation was not a new "rule." More particularly, BMV claims it properly reverted to its previous procedure of not using the non-binary gender marker because it had neither the statutory nor the regulatory authority to issue credentials bearing such a designation in the first place. Accordingly, we must begin by examining BMV's authority.

[19] As an administrative agency, BMV has only those powers conferred on it by the legislature, and it has no power to act contrary to governing statutes. *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000). Pertinent here, BMV's authority to issue driver's licenses is governed by Indiana Code section 9-24-11-2 (2016). In executing this duty, BMV is required to include on learner's permits and driver's licenses some specific information including the "gender" of the permittee or licensee. *See* Ind. Code § 9-24-11-5(a)(6).

[20] In this case, the Appellees contend the term "gender" means "gender identity"—how a person identifies themselves based on an internal sense—a definition that encompasses non-binary gender designations. On the other hand, BMV defines "gender" as synonymous with "sex"—i.e., the biological state of being either male or female. Based on this interpretation, BMV argues that, before a non-binary gender marker could be used on state credentials, a new gender designation would need to be created and implemented, and such actions are beyond the scope of BMV's authority. Thus, the question presented here is whether the term "gender" in Section 9-24-11-5(a)(6) refers only to the binary biological classifications of male and female or whether it is a broader

term that also includes non-binary classifications. As the legislature has not defined "gender," we turn to the well-established rules of statutory interpretation.

[21] We pause here to note that, while our review of a summary judgment is de novo, our review of this particular issue is de novo for the additional reason that we are presented with a question of statutory interpretation. *Vanderburgh Cnty. Election Bd. v. Vanderburgh Cnty. Democratic Cent. Comm.*, 833 N.E.2d 508, 510 (Ind. Ct. App. 2005) ("Statutory interpretation is a question of law reserved for the court and is reviewed de novo.")

[22] The goal of statutory construction is to determine and give effect to the intent of the legislature. *Ind. Bd. of Pharmacy v. Elmer*, 171 N.E.3d 1045, 1049 (Ind. Ct. App. 2021) (quoting *Ind. Alcohol & Tobacco Comm'n v. Spirited Sales*, LLC, 79 N.E.3d 371, 376 (Ind. 2017)), *trans denied*. "'The best evidence of legislative intent is the language of the statute itself[.]'" *Washington Cnty. Health Dep't v. White*, 878 N.E.2d 224, 228 (Ind. Ct. App. 2007) (quoting *Scott v. Irmeger*, 859 N.E.2d 1238, 1239 (Ind. Ct. App. 2007)), *trans denied*. Where, as here, a statutory term is undefined, the legislature has instructed us to "interpret the term using its 'plain, or ordinary and usual, sense.'" *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019) (quoting *Town of Brownsburg v. Fight Against Brownsburg Annexation*, 124 N.E.3d 597, 605 (Ind. 2019)); *see also* Ind. Code § 1-1-4-1(1) (1991).

[23] To obtain the plain meaning of a term, we consult "general-language dictionaries." *Rainbow Realty Grp., Inc.*, 131 N.E.3d at 174. One such dictionary defines "gender" as "sex." https://www.merriam-webster.com/dictionary/gender [https://perma.cc/6GVX-64VG] (last visited March 28, 2024). While it also supplies the alternative definition of "gender identity," the usage guide states: "[I]n nonmedical and nontechnical contexts, there is no clear delineation [between the words "gender" and "sex"], and the status of the words remains complicated." *Id.*

[24] Another dictionary defines the term "gender" as: "Either of the two divisions, designated female and male, by which most organisms are classified on the basis of their reproductive organs and functions; sex." https://www.ahdictionary.com/word/search.html?q=gender [https://perma.cc/A24J-P4MK] (last visited March 28, 2024). And alternatively, "One's identity as female or male or as neither entirely female nor entirely male." *Id.* The usage note with this definition states: "Some people maintain that the word sex should be reserved for reference to the biological aspects of being male or female or to sexual activity, and that the word gender should be used only to refer to sociocultural roles. . . . The distinction can be problematic, however." *Id.*

[25] In determining legislative intent, we also examine the entire statute, prior versions, changes made, and the reasons for making them. *Lincoln Nat. Bank v. Rev. Bd. of Ind. Emp. Sec. Div.*, 446 N.E.2d 1337, 1339 (Ind. Ct. App. 1983). Prior to July 2007, Section 9-24-11-5 provided, in part:

(a) A permit or license issued under this chapter must bear the distinguishing number assigned to the permittee or licensee, and must contain:

(1) the name of the permittee or licensee;
(2) the date of birth of the permittee or licensee;
(3) the mailing address or residence address of the permittee or licensee;
(4) a brief description of the permittee or licensee;
(5) if the permittee or licensee is less than eighteen (18) years of age at the time of issuance, the dates on which the permittee or licensee will become:
     (A) eighteen (18) years of age; and
     (B) twenty-one (21) years of age;
(6) if the permittee or licensee is at least eighteen (18) years of age but less than twenty-one (21) years of age at the time of issuance, the date on which the permittee or licensee will become twenty-one (21) years of age; and
(7) except as provided in subsection (c), for the purpose of identification, a:
     (A) photograph; or
     (B) computerized image;
of the permittee or licensee[.]

[26] Effective July 1, 2007, Sub-section 9-24-11-5(a) was expanded to require permits and licenses to contain, in pertinent part:

(1) The full legal name of the permittee or licensee.
(2) The date of birth of the permittee or licensee.
(3) The address of the principal residence of the permittee or licensee.
(4) The hair color and eye color of the permittee or licensee.
(5) The date of issue and expiration date of the permit or license.
(6) *The gender of the permittee or licensee.*
(7) The unique identifying number of the permit or license.
(8) The weight of the permittee or licensee.
(9) The height of the permittee or licensee.
(10) A reproduction of the signature of the permittee or licensee.

(emphasis added). The General Assembly amended the statute to comply with the requirements of the federal law commonly known as the REAL ID Act. *See* Indiana Conference Committee Report, 2007 Reg. Sess. S.B. 463; *see also* 2007 Ind. Legis. Serv. P.L. 184-2007 (S.E.A. 463).

The REAL ID Act is a product of our country's post-9/11 war on terrorism. A Real ID-compliant driver's license, permit, or identification card will be required in order to board commercial airplanes or enter certain federal facilities. https://www.in.gov/bmv/licenses-permits-ids/real-id-overview/ [https://perma.cc/3QD6-BZEW] (last visited March 28, 2024). While the deadline for this requirement has been extended several times, as of the writing of this opinion, the current deadline is May 7, 2025.

The Act sets forth the minimum document requirements and issuance standards established by the Department of Homeland Security for federal recognition of state identification. Among these is the information state driver's licenses and identification cards must contain, which includes "[t]he person's gender." REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Title II, § 202(b)(3) (codified in 49 U.S.C. § 30301 note). In establishing these minimum standards, the Department of Homeland Security left the determination of "gender" up to each state. *See* Minimum Standards for Driver's Licenses and Identification Cards Acceptable by Federal Agencies for Official Purposes, 73 Fed. Reg. 5272-01, 5301 (January 29, 2008) (to be codified at 6 C.F.R. pt. 37). Thus, our legislature's amendment is not necessarily indicative of an intention to allow

additional gender markers on state credentials but rather simply a result of implementing the federal requirements under the REAL ID Act.

[29] Other rules of statutory construction serve to bolster BMV's interpretation. A principle paramount to the interpretation of a statute instructs that statutes concerning the same subject matter should be harmonized to give effect to each, and this rule takes precedence over other rules of statutory construction. *McNeil v. Anonymous Hosp.*, 219 N.E.3d 789, 796-97 (Ind. Ct. App. 2023) (quoting *McCabe v. Comm'r, Ind. Dep't of Ins.*, 949 N.E.2d 816, 820 (Ind. 2011)). Application of this principle in this case suggests legislative intent to consider the term "sex" synonymous with the term "gender." For example, Section 9-30-3-6, concerning data to be included in an information and summons in traffic cases, specifically requires the "sex" of the operator of the vehicle to be recorded. *See* Ind. Code § 9-30-3-6(b) (2007). Notably, this statute was amended effective July 1, 2007, the same time Section 9-24-11-5 was amended to incorporate the federal terminology of "gender," yet the legislature chose to maintain the term of "sex" in the text of Section 9-30-3-6. Likewise, Section 9-30-6-16 includes the "sex" of the licensee as one piece of required information to be included in a bureau certificate when a licensee either fails or refuses a chemical test. *See* Ind. Code § 9-30-6-16 (2005).

[30] An additional principle to be considered in construing an ambiguous statute is the weight we give to the interpretation of the administrative agency charged with enforcing the statute. *Ind. Bureau of Motor Vehicles v. McClung*, 138 N.E.3d

303, 308 (Ind. Ct. App. 2019). We assign the agency's interpretation significant weight, provided it is reasonable and consistent with the statute itself. *Id.*

[31] BMV, the agency tasked with enforcing Section 9-24-11-5, construes the term "gender" as synonymous with "sex." In discharging its mandated duty under Sub-section 9-24-11-5(a)(6) to indicate on Indiana driver's licenses the "gender" of the licensee, BMV includes on the face of licenses category 15 labeled "Sex." This label is followed by either an "M" for male or an "F" for female, as evidenced below in the example displayed on BMV's website. Moreover, BMV follows this procedure even on those licenses issued in compliance with the federal REAL ID Act, whose terminology Section 9-24-11-5(a)(6) mirrors.[3]



https://www.in.gov/bmv/licenses-permits-ids/learners-permits-and-drivers-licenses-overview/drivers-license/ [https://perma.cc/Q269-CPRR] (last visited March 28, 2024).

---

[3] A Real ID is indicated by the star in the upper right-hand corner of a driver's license, permit, or state identification card. https://www.in.gov/bmv/licenses-permits-ids/real-id-overview/ [https://perma.cc/VF4A-W7DY] (last visited March 28, 2024).

[32] In sum, general-language dictionaries define "gender" as "sex." They further state that typically there is no clear delineation between the two terms and when a distinction is made between them, it proves to be problematic. Further, our examination suggests the legislature incorporated the term "gender" into our state statute simply to comply with the federal REAL ID Act, and it has not embarked on creating a new gender designation, which it alone has the authority to do. Moreover, even since the 2007 amendment adding the term "gender," Indiana driver's licenses bear an "M" or "F" in the category entitled "Sex," and other statutes within Title 9 likewise use "gender" and "sex" interchangeably.

[33] Thus, until the legislature otherwise directs, we conclude "sex" is the definition of "gender" and understand the "gender" of a permittee or licensee, under Title 9 generally and under Sub-section 9-24-11-5(a)(6) specifically, to refer to the biological division of being either female or male. Applying that definition here, we hold the trial court erred in granting summary judgment for the Appellees on their claim that BMV violated ARPA by ceasing to issue identification credentials with non-binary gender designations.

## B. Equal Protection Claim

[34] BMV claims the trial court erred in concluding that the agency's refusal to issue a non-binary designation on state credentials violates the Appellees' Fourteenth Amendment right to equal protection by impermissibly treating them differently from persons who identify as binary.

[35] The guarantee of equal protection prohibits states from denying "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. While the Equal Protection Clause guarantees that similar individuals will be treated in a similar manner by the government, it does not deny the government's ability to classify persons in the application of its laws. *Phelps v. Sybinsky*, 736 N.E.2d 809, 818 (Ind. Ct. App. 2000) (quoting 3 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW § 18.2, at 208 (3d ed. 1999)), *trans. denied*. Rather, it guarantees the "'classifications will not be based on impermissible criteria or arbitrarily used to burden a group of individuals.'" *Id.*

[36] In assessing whether the classification violates the Equal Protection Clause, we must first determine the applicable level of scrutiny, which is determined by the nature of the classification. *Thomas v. Greencastle Cmty. Sch. Corp.*, 603 N.E.2d 190, 192 (Ind. Ct. App. 1992). We apply strict scrutiny to a classification if the unequal treatment is based on membership in a protected class (e.g., race) or denial of a fundamental right (e.g., right to vote). *Shepler v. State*, 758 N.E.2d 966, 969 (Ind. Ct. App. 2001), *trans. denied*. When the unequal treatment is premised on a quasi-suspect classification, such as sex, we apply intermediate scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461, 108 S. Ct. 1910, 1914, 100 L. Ed. 2d 465 (1988). In all other cases, courts default to rational basis review. *Shepler*, 758 N.E.2d at 969.

[37] Here, the Appellees argue that a person's status as non-binary is a classification based on sex, thus triggering intermediate scrutiny. They cite *Bostock v. Clayton*

*County, Georgia*, 590 U.S. 644, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) and claim the U.S. Supreme Court has held that discrimination based on gender identity is discrimination based on sex. *See* Appellees' Br. p. 37. For its part, BMV contends that an individual's non-binary status is different from an individual's sex and it has not been recognized as a protected characteristic that triggers heightened scrutiny under the Equal Protection Clause. For these reasons, BMV urges a rational basis review.

[38] In *Bostock*, the Supreme Court established that Title VII's prohibition of discrimination based on an individual's sex encompasses discrimination based on an individual's sexual orientation or transgender status. Yet, the Court explicitly noted that only Title VII was before it and not other federal or state laws that prohibit sex discrimination. *Id.*, at 681, 140 S. Ct. at 1753. Thus, neither the U.S. Supreme Court nor the Indiana Supreme Court has definitively recognized those individuals who identify as non-binary as a protected class under the Equal Protection Clause so as to trigger a heightened level of scrutiny. Accordingly, we believe the rational basis test represents the proper level of scrutiny to be applied here.

[39] We turn then to a rational basis review, which requires us to determine whether the unequal treatment is rationally related to a legitimate governmental purpose. *Shepler*, 758 N.E.2d at 969. In doing so, we are mindful that government action is clothed with a presumption of constitutionality and the party challenging the action must overcome that presumption "'by a clear showing of arbitrariness and irrationality.'" *Reinoehl v. St. Joseph Cnty. Health*

*Dep't*, 181 N.E.3d 341, 359 (Ind. Ct. App. 2021) (quoting *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 451, 108 S. Ct. 2481, 101 L. Ed. 2d 399 (1988)), *trans. denied*. A classification will be upheld against an equal protection challenge if there is "'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Heller v. Doe by Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 2642, 125 L. Ed. 2d 257 (1993) (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 2101, 124 L. Ed. 2d 211 (1993)). Moreover, legitimate governmental interests of states are numerous and include an interest in their efficient and effective operation. *City of Indianapolis v. Armour*, 946 N.E.2d 553, 560 (Ind. 2011), *aff'd sub nom. Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 132 S. Ct. 2073, 182 L. Ed. 2d 998 (2012).

[40] BMV asserts its binary-only policy for state credentials is designed to accurately, consistently, and efficiently identify licensees. The agency indicates that recording an individual's objective characteristic of sex better advances the state interest in accurate identification than would recording a person's subjective non-binary identity. *See* Appellees' Br. p. 15 (defining non-binary as "a term used by some people who experience their gender as not falling within the binary categories of man and woman"); *see also* Appellants' App. Conf. Vol. II, p. 42 (Plaintiffs' Compl.) (defining non-binary as term used to describe an individual whose "internal and inherent sense" of being does not fall into the binary categories of male or female). Additionally, identifying an individual's sex on their state credentials promotes consistency within the system as other statutes require the licensee's sex to be identified and recorded. *See* Ind. Code

§§ 9-30-3-6(b), 9-30-6-16.  Finally, BMV suggests that issuing credentials identifying an individual's sex better serves to further administrative efficiency than reporting a subjective status with innumerable designations.

[41]     The Appellees, although denouncing BMV's proffered objectives, fail to clearly demonstrate this classification is arbitrary and irrational in order to overcome the presumption of constitutionality.  In the absence of such a showing by the Appellees, we find these to be legitimate government interests and conclude that the binary-only policy is rationally related to these goals. Thus, we reverse the trial court's entry of summary judgment in favor of the Appellees on their equal protection claim.

### C. Due Process Claim

[42]     Lastly, BMV contends the trial court erred by determining that the agency violated the Appellees' right to informational privacy under the Fourteenth Amendment.  Specifically, the trial court concluded the Appellees' rights were infringed upon when they were forced to select a binary designation for their state credentials that is inconsistent with their gender status, thereby possibly revealing private health information.

[43]     Within due process doctrine, there are two branches of claims—procedural and substantive.  In a procedural due process claim, a plaintiff must establish a deprivation of an interest in life, liberty, or property.  *Snyder v. Smith*, 7 F. Supp. 3d 842, 858 (S.D. Ind. 2014).  A substantive due process claim is one of the "fundamental rights."  *Id.*  The Supreme Court, while strictly limiting this

category, has held it includes matters relating to "'marriage, family, procreation, and the right to bodily integrity.'" *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 272, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (plurality opinion)). Further, in our review of such a claim, state laws are afforded deference and "need only be rational and non-arbitrary in order to satisfy the right to substantive due process." *Gibson v. Am. Cyanamid Co.*, 760 F.3d 600, 614 (7th Cir. 2014).

[44] First and foremost, as this is not a claim relating to marriage, family, procreation, or the right to bodily integrity (e.g., refusal of unwanted medical treatment), the Appellees are seeking to expand the Supreme Court's purposefully narrow concept of substantive due process. We think the statutes, case decisions, and structure weigh against doing so.

[45] Furthermore, as we determined in Section *B.*, *supra*, the Appellees have not shown Section 9-24-11-5 to be irrational or arbitrary in order to succeed on their constitutional claims. *See Gibson*, 760 F.3d at 614 (saying that rational and non-arbitrary state laws satisfy substantive due process). In addition, their due process claim seems to be speculative. They assert that when choosing between the binary designations for their credentials, non-binary applicants "will likely understand" they must select their sex assigned at birth and that "[i]n certain instances," this disclosure will reveal an applicant's non-binary status. Appellees' Br. p. 54. And finally, it seems that the use of a non-binary designation such as "X" on their credentials discloses the Appellees' gender status in the same manner they are attempting to avoid.

[46] We hold the trial court erred in granting summary judgment for the Appellees on their substantive due process claim.

## Conclusion

[47] Based on the foregoing, we conclude the trial court erred by granting the Appellees' untimely petition for judicial review. Nevertheless, as the action for declaratory judgment and injunctive relief is a distinct action, we rule on its merits.

[48] Until the General Assembly determines otherwise, we hold that "gender" in Title 9 of the state statutory scheme means "sex" and conclude the trial court erred by entering summary judgment for the Appellees on their claim that BMV violated ARPA by ceasing to issue identification credentials with non-binary gender designations. In addition, we determine an individual's non-binary status necessitates only the standard scrutiny of the rational basis test and, as Appellees were unable to demonstrate that there was no reasonably conceivable state of facts that could provide a rational basis for the classification, we conclude the trial court erred by entering summary judgment for Appellees on their equal protection claim. Finally, we decline the invitation to expand the category of substantive due process to include the Appellees' claim and conclude that, because the trial court erroneously did so, it also erred by entering summary judgment for the Appellees on their due process claim.

[49] Accordingly, we reverse the court's grant of judicial review and summary judgment in favor of the Appellees and remand with instructions to dissolve the

injunction against BMV and enter summary judgment and declaratory judgment for BMV consistent with this opinion.

Reversed and remanded with instructions.

Bradford, J., and Felix, J., concur.

ATTORNEYS FOR APPELLANTS

Theodore E. Rokita
Attorney General of Indiana

James A. Barta
Solicitor General of Indiana

Katelyn E. Doering
Deputy Attorney General
Indianapolis, Indiana


ATTORNEYS FOR APPELLEES

Jon Laramore
Indiana Legal Services, Inc.
Indianapolis, Indiana

Megan Stuart
Jessica Meltzer
Indiana Legal Services, Inc.
Indianapolis, Indiana

Brent A. Auberry
David A. Suess
Faegre Drinker Biddle & Reath, LLP
Indianapolis, Indiana